UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHYLLIS SPARKS-MAGDALUYO,

            Plaintiff,

    v.

NEW PENN FINANCIAL, LLC,

            Defendant.

Case No.  16-cv-04223-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 8

### INTRODUCTION

Pending before the Court is Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing's ("Defendant") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). Plaintiff filed an Opposition (Dkt. No. 13), but Defendant did not file a reply. The Court previously found this matter suitable for disposition without oral argument, but ordered supplemental briefing. Order, Dkt. No. 8. Both parties timely submitted supplemental responses. *See* Def.'s Suppl. Resp., Dkt. No. 16; Pl.'s Suppl. Resp., Dkt. No. 17. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's Motion for the following reasons.

### BACKGROUND

The following factual background is taken from Plaintiff's Complaint (Dkt. No. 1) and is taken as true for purposes of this Motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).[1] On or about March 22, 2005, Plaintiff obtained a $377,000 loan (the "Loan") from

---

[1] The Court acknowledges that the parties present vastly different descriptions of the events. While Plaintiff only alleges the existence of one Loan dated March 22, 2005, Defendant contends Plaintiff obtained *two* loans—the first in March 2005 and the second in September 2006—and that she conflates the events concerning them. *See* Mot. at 2-3; *see also* RJN, Exs. A (Deed of Trust

United States District Court
Northern District of California

1  Quick Loan Funding, Inc. ("Quick Loan").  Compl. ¶ 9.  The Loan was secured by a deed of trust

2  encumbering real property located at 216 Bridgeview Drive, San Francisco, California 94590 (the

3  "Property").  *Id.*; *see also id.* ¶ 3.

4       On or about April 15, 2008, the Property was sold at a public auction to Robert T. Dunn

5  and the Dunn Family Trust ("Dunn") for $112,475.12.  *Id.* ¶ 10.  On or about April 28, 2008, FCI

6  National Lender Services, Inc. ("FCI"), the purported trustee of the loan, recorded with the San

7  Francisco County Recorder a Trustee's Deed Upon Sale.  *Id.* ¶ 11.  According to this document,

8  FCI served as a trustor for a deed of trust securing the Property dated September 13, 2006 and

9  executed by Plaintiff.  *Id.*  The Deed Upon Sale further provided that FCI granted its rights and

10 interests to the Property to Robert T. Dunn and the Dunn Family Trust ("Dunn") and to

11 Homesavers, a California Corporation.  *Id.*  Dunn received a 99% undivided interest and

12 Homesavers received a 1% undivided interest.  *Id.*  The Deed Upon Sale states the Deed of Trust

13 was recorded on June 29, 2006.  *Id.*  Plaintiff asserts "the purported conveyance date of the deed

14 of trust dated September 13, 2006 is claimed to have taken place more than three months prior to

15 the deed of trust's recording date."  *Id.*

16      Between 2012 and 2015, the Loan was assigned to various entities.  On or about April 17,

17 2012, Quick Loan assigned the Deed of Trust to The Bank of New York Mellon, formerly known

18 as The Bank of New York, as trustee for the Certificateholders of CWABS, Inc., Asset-Backed

19 Certificates, Series 2005-SD2.  *Id.* ¶ 12.  "At some point subsequent to the Loan's origination,

20 Bank of America, N.A. purported to be the servicer of the Loan."  *Id.*¶ 13.  On or about February

21 15, 2014, Resurgent Capital Services became the Loan's servicer.  *Id.* ¶ 14.  Defendant became the

---

dated March 22, 2005) & G (Deed of Trust dated Sept. 13, 2006), Dkt. No. 9.  Defendant contends the fraudulent conduct stems from the September 2006 loan in which Defendant has no involvement.  Whether or not there were two loans and the extent of Defendant's involvement in the second loan, if any, is a factual dispute the Court cannot resolve at a motion to dismiss.  *See, e.g., Skinner v. Mountain Lion Acquisitions, Inc.*, 2014 WL 3853424, at *3 (N.D. Cal. Aug. 1, 2014) (declining to resolve factual dispute in Rule 12(b)(6) motion to dismiss).  For purposes of this Motion, the Court must accept the allegations in Plaintiff's Complaint as true.  *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.").

United States District Court
Northern District of California

servicer on or about March 1, 2014 and subsequently began foreclosure proceedings against the Property. *Id.* ¶ 15.  Defendant and its alleged agent, the Law Offices of Les Zieve, have also represented "that an owner of the [L]oan is Homesavers, a California Corporation." *Id.* ¶ 18.

On or about October 26, 2015, Plaintiff sent Defendant "'qualified written request' in an attempt to determine whether or not [Defendant] had the proper authority to foreclose against the [] Property pursuant to the Loan and its accompanying deed of trust." *Id.* ¶ 16.  In so doing, Plaintiff requested "pertinent documents pertaining to the loan's origination," assignments, and transfers of the Loan.  *Id.*  Defendant failed to provide evidence of (1) updated assignments of ownership, (2) its custodial servicing obligations to the Loan, (3) proof of purchases, (4) affidavits of sale, or (5) documentation detailing the restructuring of assignments of the Deed of Trust.  *Id.* (citing *id.*, Ex. 3 (screenshot of internet website showing "Business Search – Results" of search for "Homesavers" dated May 19, 2016)).  Despite its failure "to provide documentation legitimizing its ability to foreclose on the [] Property[,]" Defendant, through Zieve, scheduled trustee sales for November 9, 2015 and December 9 and 22, 2015. *Id.* ¶ 17 (citing *id.*, Ex. 2 (two "Notice[s] of Postponement of Trustee's Sale" dated November 9 and December 8, 2015)).  Plaintiff does not allege the Property has in fact been sold.  *See* Compl.

Plaintiff initiated this action on July 26, 2016.  *See id.*  She asserts claims of fraud and quiet title, as well as claims for violations of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605.  *Id.* ¶¶ 19-57.

## LEGAL STANDARD

### A.     Rule 12(b)(6)

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face.  *Id.* at 570.  "A claim has facial

3

United States District Court
Northern District of California

1  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

3  678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

4  more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550

5  U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

6  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

7  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

8  cause of action will not do. Factual allegations must be enough to raise a right to relief above the

9  speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

10      In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

11  true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*,

12  551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In

13  addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v.*

14  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

15      If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

16  request to amend the pleading was made, unless it determines that the pleading could not possibly

17  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

18  banc) (internal quotations and citations omitted). However, the Court may deny leave to amend

19  for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

20  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

21  to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

22  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

23  *Davis*, 371 U.S. 178, 182 (1962)).

24  **B.      Rule 12(b)(7)**

25      A party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed.

26  R. Civ. P. 12(b)(7). Rule 19 requires a three-step inquiry. *Salt River Project Agr. Imp. & Power*

27  *Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). It "is a practical, fact-specific one, designed to

28  avoid the harsh results of rigid application." *Dawavendewa v. Salt River Project Agr. Imp. &*

4

1   *Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002).  The court must first "determine whether a

2   nonparty should be joined under Rule 19(a) . . . as a 'person required to be joined if feasible.'"

3   *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) ("*Peabody II*").  If so, the

4   court next determines "whether it is feasible to order that the absentee be joined."  *Id.* (internal

5   quotation marks omitted).  Finally, "if joinder is not feasible, the court must determine at the third

6   stage whether the case can proceed without the absentee or whether the action must be dismissed."

7   *Id.* (internal quotation marks omitted).  "Rule 19 is designed to protect the interests of absent

8   parties, as well as those ordered before the court, from multiple litigation, inconsistent judicial

9   determinations or the impairment of interests or rights."  *CP Nat'l Corp. v. Bonneville Power*

10  *Admin.*, 928 F.2d 905, 911 (9th Cir. 1991).

### REQUEST FOR JUDICIAL NOTICE

12       Before turning to the parties' substantive arguments, the Court first addresses Defendant's

13  Request for Judicial Notice.  Under Federal Rule of Evidence 201(b), "[t]he court may judicially

14  notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the

15  trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources

16  whose accuracy cannot reasonably be questioned."  Courts "may take judicial notice of court

17  filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d

18  741, 746 n.6 (9th Cir. 2006); *see Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015)

19  (taking judicial notice of recorded deed of trust, recorded assignments of deed of trust, recorded

20  notice of default, and recorded notice of trustee's sale).  But while courts may take judicial notice

21  of undisputed matters of public record, they may not judicially notice "*disputed* facts stated in

22  public records."  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in

23  original).

24       Additionally, "[w]hen ruling on a Rule 12(b)(6) motion to dismiss, if a district court

25  considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule

26  56 motion for summary judgment, and it must give the nonmoving party an opportunity to

27  respond."  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  "A court may,

28  however, consider certain materials—documents attached to the complaint, documents

United States District Court
Northern District of California

5

incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*

Defendant requests the Court take judicial notice of the following documents:

1.      Exhibit A: Deed of Trust dated March 2, 2005 and recorded in the official records of San Francisco Recorder's Office on March 30, 2005 as instrument number 2005-H92955500.

2.      Exhibit B: Assignment Deed of Trust dated April 9, 2012, and recorded in the official records of San Francisco Recorder's Office on August 19, 2013 as instrument number 2012-J39396000.

3.      Exhibit C: Loan Modification Agreement, dated July 17, 2013, and recorded in the official records of San Francisco Recorder's Office on August 19, 2013 as instrument number 2013-J73201900.

4.      Exhibit D: Notice of Default dated March 30, 2015 and recorded in the official records of San Francisco Recorder's Office on April 2, 2015 as instrument number 2015-K04166600.

5.      Exhibit E: Substitution of Trustee dated November 4, 2015, and recorded in the official records of San Francisco Recorder's Office on November 12, 2015 as instrument number 2015-K15529000.

6.      Exhibit F: Notice of Trustee's Sale dated July 19, 2016, and recorded in the official records of San Francisco Recorder's Office on July 21, 2016 as instrument number 2016-K29122300.

7.      Exhibit G: Long Form Deed of Trust and Assignment of Rents for Home Equity Revolving Line of Credit dated September 14, 2006, and recorded in the official records of San Francisco Recorder's Office on September 29, 2006 as instrument number 2006-I26381400.

8.      Exhibit H: Assignment Deed of Trust dated October 3, 2006, and recorded in the official records of San Francisco Recorder's Office on October 13, 2006 as instrument number 2006-I26996300.

9.      Exhibit I: Notice of Default dated March 6, 2007, and recorded in the official

records of San Francisco Recorder's Office on March 8, 2007 as instrument number 2007-

I3491800.

10.      Exhibit J: Trustee's Deed Upon Sale dated April 15, 2008, and recorded in the

official records of San Francisco Recorder's Office on April 28, 2008 as instrument

number 2008- I57355600.

*See* RJN.  Plaintiff does not object to Defendant's request.  As Defendant seeks judicial notice of

documents that are in the public record, the Court finds it appropriate to take judicial notice of

these documents under Rule 201(b) and GRANTS Defendant's request.

## DISCUSSION

Because a determination that Plaintiff failed to join a necessary party could lead to the

dismissal of the action in its entirety, the Court then addresses Defendant's arguments under Rule

12(b)(7) before turning to its arguments under Rule 12(b)(6).

**A.      Rule 12(b)(7)**

Defendant argues Plaintiff's failure to join her husband, Melecio, in the lawsuit is grounds

for dismissal, as both his and Plaintiff's names appear on the deed of trust.  *See* Mot. at 4-5.

Plaintiff asserts she and Melecio are no longer married and no longer share common title.  Opp'n

at 6; *see id.*, Ex. 1 (Notice of Entry of Judgment).  On July 29, 2015, Melecio conveyed "all right,

title, and interest" he had in the Property to Plaintiff as Plaintiff's "sole and separate property."

*Id.*; *id.*, Ex. 2 (Interspousal Grant Deed).  She contends that because Melecio no longer has any

rights in the Property, he cannot bring a duplicate action and is therefore not an indispensable

party.  *Id.*  Defendants point out, however, that even if Melecio's name has been removed from the

title, Plaintiff does not allege or provide evidence that his name has been taken off the deed of

trust or that Plaintiff has assumed the responsibilities of the Loan in its entirety.  Def.'s Suppl.

Resp. at 3.

"A real property loan generally involves two documents, a promissory note and a security

instrument." *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 438 (2003) (internal quotation marks

omitted).   The security instrument secures the promissory note and entitles the lender to reach

United States District Court
Northern District of California

7

1    some asset of the debtor if the note is not paid. *Id.* "In California, the security instrument is most

2    commonly a deed of trust (with the debtor and creditor known as trustor and beneficiary and a

3    neutral third party known as trustee)." *Id.* (internal quotation marks omitted). In other words,

4    "[u]nder California law, a 'deed of trust' creates a lien on the property in favor of the creditor." *St.*

5    *Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534 (9th Cir. 1994), *amended*, 46 F.3d 969 (9th

6    Cir. 1995) (citing *Monterey S.P. P'ship v. W.L. Bangham, Inc.*, 49 Cal. 3d 454, 460 (Cal. 1989)

7    (en banc)). But "a lien does not result in assignment of ownership; 'a lien . . . transfers no title to

8    the property subject to the lien.'" *BNY Midwest Tr. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*

9    *Penn.*, 213 F. App'x 563, 566–67 (9th Cir. 2006) (quoting Cal. Civ. Code § 2888) (edits in

10   original).

11          "Real property is transferable even though the title is subject to a mortgage or deed of trust,

12   but the transfer will not eliminate the existence of that encumbrance." *Nguyen*, 105 Cal. App. 4th

13   438. "Thus, the grantee takes title to the property subject to all deeds of trust and other

14   encumbrances, whether or not the deed so provides." *Id.* But while

15              "[u]pon the transfer of real property covered by a mortgage or deed
                of trust as security for an indebtedness, the property remains subject
16              to the secured indebtedness[,] . . . the grantee is not personally liable
                for the indebtedness or to perform any of the obligations of the
17              mortgage or trust deed unless his agreement to pay the indebtedness,
                or some note or memorandum thereof, is in writing and subscribed
18              by him or his agent or his assumption of the indebtedness is
                specifically provided for in the conveyance."
19

20   *Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2*, 167 Cal. App. 4th 544, 554 (2008), *as modified on*

21   *denial of reh'g* (Nov. 3, 2008) (quoting *Cornelison v. Kornbluth*, 15 Cal. 3d 590, 596-97 (1975)

22   (en banc)).

23          Plaintiff does not dispute that both she and Melecio signed the deed of trust. *See* Opp'n;

24   RJN, Ex. A at ECF p.14. But the Interspousal Grant Deed in which Melecio transferred his

25   interest in the Property to Plaintiff does not specifically provide that Plaintiff assumes Melecio's

26   obligations under the deed of trust. *See* Opp'n, Ex. 2. Nor does Plaintiff offer or allege the

27   existence of another writing that transfers Melecio's obligations to Plaintiff. Thus, at this point, it

28   appears Melecio remains personally liable for the Loan. As such, the Court next considers

8

whether Melecio is a necessary party.

　　1.　　Necessary Party

　　A person who should be "joined if feasible" is a necessary party. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004) ("The term[] 'necessary' . . . [is a] term[] of art in Rule 19 jurisprudence: 'Necessary' refers to a party who should be 'joined if feasible.'" (citing Fed. R. Civ. P. 19(a); *Dawavendewa*, 276 F.3d at 1154–55) (brackets omitted)). A person is necessary to the action if (1) "in his absence, the court cannot accord complete relief among existing parties in his absence"; (2) "he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest," or (3) "he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest." *Lee*, 672 F.3d at 1179 (citing Fed. R. Civ. P. 19(a)(1)(A), (a)(1)(B)(i), (a)(1)(B)(ii)).

　　Defendant argues Melecio is a necessary party to this action because his absence creates a significant risk of multiple lawsuits. Mot. at 4; Def.'s Suppl. Resp. at 4. Defendant specifically refers to Plaintiff's RESPA and quiet title claims, as these particular claims carry the risk of multiple litigation or could affect Melecio's rights if he is not joined. Def.'s Suppl. Resp. at 4.

　　Plaintiff alleges Defendant failed to respond to Plaintiff's qualified written request ("QWR") in violation of 12 U.S.C. § 2605(e). Compl. ¶¶ 50-57. Melecio, as a signatory to the deed of trust, could also bring claims against Defendant for conduct arising from Defendant's servicing of the Loan. *Cf. McClain v. First Mortg. Corp.*, 2015 WL 11199074, at *2 (C.D. Cal. Mar. 16, 2015) ("It is well established . . . that a person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship."). Accordingly, Plaintiff's failure to join Melecio runs the risk of duplicative litigation.

　　2.　　Whether Joinder is Feasible

　　"If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("*Peabody I*"). There are three instances where

9

1    joinder is not feasible: "when venue is improper, when the absentee is not subject to personal

2    jurisdiction, and when joinder would destroy subject matter jurisdiction." *Id.*; *see* Fed. R. Civ. P.

3    19(a)(1), (3).

4            Defendant does not contest the feasibility of Melecio's joinder, but it nevertheless urges

5    the Court to dismiss the action.  Mot. at 5 ("[T]here is nothing that would make joining [Melecio]

6    in the lawsuit not feasible especially since Plaintiff is bringing forth this lawsuit based on federal

7    claims[.]"); *id.* ("[T]he action should not continue unless Mr. Magdaluyo is involved[.]").  The

8    Court declines to do so.  Dismissal is appropriate where a necessary party cannot be joined.  Fed.

9    R. Civ. P. 19(b); *see also Standish v. Encore Credit Corp.*, 2014 WL 232021, at *1 (D. Ariz. Jan.

10   22, 2014) ("To justify dismissal of a case for failure to join an indispensable party, . . . joinder of

11   the party must not be feasible.").  Indeed, there are no facts before the Court which suggest that

12   venue is improper or that Melecio is not subject to the Court's personal jurisdiction.  Nor would

13   joinder destroy subject matter jurisdiction when Plaintiff asserts federal claims under RESPA and

14   the FTC Act.  *See* Compl. ¶¶ 39-57; *Cement Masons Health & Welfare Tr. Fund for N. Cal. v.*

15   *Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999) ("Any non-frivolous assertion of a federal claim

16   suffices to establish federal question jurisdiction[.]").  Thus, it appears joining Melecio will be

17   feasible.

18           3.      Dismissal of Action

19           As Melecio is a necessary party, the Court GRANTS Defendant's Motion on this ground.

20   But given that joinder is feasible, the Court GRANTS Plaintiff LEAVE TO AMEND to add

21   Melecio as a co-plaintiff.  If Plaintiff does not join Melecio, Rule 19(c) requires a party to plead

22   the reasons for nonjoinder by "stat[ing]: (1) the name, if known, of any person who is required to

23   be joined if feasible but is not joined; and (2) the reasons for not joining that person."  Fed. R. Civ.

24   P. 19(c).

25   **B.      Rule 12(b)(6)**

26           The Court now turns to Defendant's argument that Plaintiff's Complaint also fails to state

27   a claim.

28   //

1.   <u>Fraud</u>

Count One of Plaintiff's Complaint asserts a claim for fraud.  Compl. ¶¶ 19-27.  "The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp.*, *Inc.*, 15 Cal. 4th 951, 974 (Cal. 1997)) (emphasis omitted).

Rule 9(b) requires a plaintiff alleging fraud or mistake plead "with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A plaintiff must establish "more than the neutral facts necessary to identify the transaction": she "must set forth what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  This "includ[es] the who, what, when, where, and how of the misconduct charged."  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted).  This "give[s] defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *United States v. United Healthcare Ins. Co.*, __ F.3d __, 2016 WL 7378731, at *14 (9th Cir. Aug. 10, 2016) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Defendant argues Plaintiff's fraud claim should be dismissed on two grounds.  First, Defendant contends Plaintiff's allegations stem from confusion over her Loan and, as a result, Plaintiff cannot show Defendant engaged in fraudulent activity in relation to the Loan.  Mot. at 6-7; *see id.* at 2-3.  Second, Defendant argues Plaintiff's fraud claim is barred by the statute of limitations.  *Id.* at 7.

a.   *Rule 9(b) Particularity*

At its core, Defendant's argument regarding Plaintiff's confusion over the Loan concerns Plaintiff's failure to plead fraud with the requisite particularity.  Defendants contend that by blurring the events, the Complaint fails to allege specific facts indicating Defendant—and not a third party—committed fraud with regard to the Loan.  Mot. at 6.

United States District Court
Northern District of California

1    The Complaint alleges Defendant made "affirmative" misrepresentations to Plaintiff and

2    perpetuated its fraud through (1) FCI's April 28, 2008 recording of a Deed Upon Sale for a deed

3    of trust, the legitimacy of which "is called into question since the purported conveyance date of

4    the deed of trust dated September 13, 2006 is claimed to have taken place more than three months

5    prior to the deed of trust's recording date";  (2) Defendant's and Zieve's "alleg[ations] that an

6    owner of the [L]oan is Homesavers" where "the California Secretary of State shows no active

7    corporation or entity by the name of 'Homesavers'"; (3) Defendant's "communicat[ions] to

8    Plaintiff that i[t] has the authority to collect payments pursuant to the Loan" when Defendant[2]

9    does not in fact have such authority; (4) Defendant "communicated to Plaintiff that i[t] has the

10   authority to foreclose upon the [] Property on a number of occasions by scheduling trustee sale

11   dates . . . including . . . November 9, 2015; December 9, 2015; and December 22, 2015."  *Id.*  ¶¶

12   24(a)-(d).  Plaintiff asserts that she justifiably relied on and was harmed by Defendant's

13   misrepresentations.  *Id.* ¶¶ 25-26.

14       Plaintiff fails to allege particularized facts as required by Rule 9(b).  For instance,

15   Plaintiff's contends that "FCI . . . recorded a Deed Upon Sale with the San Francisco County

16   Recorder" and questions the legitimacy of this document.  Compl. ¶ 24(a).  But she does not

17   attribute this conduct to Defendant: there are no allegations that FCI acted upon Defendant's

18   orders, or that Defendant was otherwise involved or had any interest in the recording of the Deed

19   Upon Sale.  Plaintiff's allegations regarding Defendant's fraudulent communications to Plaintiff

20   are also conclusory and lack specificity.  *See* Compl. ¶ 24(b)-(d).  She does not provide the date on

21   which Defendant alleged that Homesavers is an owner of the Loan, nor does she allege the manner

22   in which Defendant communicated this to her.  The same applies to her allegation that Defendant

23   stated it has the authority to collect payments under the Loan: Plaintiff does not explain when or

24   how Defendant made this assertion.

25

26   _____

27   [2] Plaintiff alleges "Shellpoint has communicated to Plaintiff that is has the authority to collect payments pursuant the Loan. In actuality, *Plaintiff* does not have the authority to collect payments pursuant the Loan because the Deed Upon Sale is legally impossible and fraudulent." Compl. ¶

28   24(c) (emphasis added).  Presumably, Plaintiff means to allege that Defendant does not have the authority collect payments pursuant to the Loan.

Plaintiff does provide greater detail regarding Zieve's alleged communication that it had the authority to foreclose on the Property. She attaches to her Complaint two letters from the Zeive dated November 9 and December 8, 2015. *See* Compl., Ex. 2. These letters state that trustee's sales scheduled for November 9 and December 8, 2015 have been rescheduled for December 9 and December 22, 2015, respectively. *See id.* Plaintiff does not provide a letter scheduling the November 9, 2015 trustee's sale. Although Plaintiff alleges Zieve—who is not a defendant in this action—is Defendant's agent, Plaintiff fails to plead the agency relationship with particularity as she is required to do. *See Morici v. Hashfast Techs. LLC*, 2015 WL 906005, at *4 (N.D. Cal. Feb. 27, 2015) ("[T]he agency relationship must be pleaded with particularity when a claim for fraud, brought in federal court, purports to impose liability on such a theory."); *Jackson v. Fischer*, 2013 WL 6732872, at *17 (N.D. Cal. Dec. 20, 2013) ("[W]here a plaintiff alleges that a defendant is liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency relationship be pled with particularity."). Accordingly, the Court finds the Complaint lacks the requisite level of detail to satisfy Rule 9(b).

> b.      *Statute of Limitations*

California law imposes a three-year statute of limitations on fraud claims, but it "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. Code § 338(d). "The limitations period for fraud thus incorporates the 'delayed discovery rule.'" *Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204, 1222 (E.D. Cal. 2010) (citing *Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920 (2009)). The delayed discovery rule provides that "a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005). "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308,

United States District Court
Northern District of California

13

1319 (2007).

Plaintiff alleges that at least some of the fraudulent activity took place in 2008, including the sale of the Property and the recording of the Deed Upon Sale.  *See* Compl. ¶¶ 10-11, 24(a). Plaintiff fails to plead facts that show how and when she discovered the fraudulent activity and why, despite reasonable diligence, she was unable to discover it earlier.  Plaintiff initiated this action in 2016, approximately eight years after the alleged fraud occurred.  Plaintiff thus fails to adequately allege the delayed discovery rule applies.  And, as discussed above, the Complaint does not specify dates for the other allegedly fraudulent acts for the Court to believe that they fall within the statute of limitations.

    c. *Leave to Amend*

As Plaintiff fails to meet the particularity requirements of Rule 9(b) and does not invoke the delayed discovery rule, the Court GRANTS Defendant's Motion as to Plaintiff's fraud claim. However, the Court will grant Plaintiff leave to amend, provided that she can allege specific facts that connect Defendant to the fraudulent activity and that shows the delayed discovery rule applies.

    2. <u>Quiet Title</u>

Count Two of the Complaint asserts a quiet title claim.  Compl. ¶¶ 28-38.  California Code of Civil Procedure section 761.020 governs claims for quiet title.  In order to state a quiet title claim, a plaintiff must allege the following in a verified complaint:  (1) a description of the property that is the subject of the action, including, if real property, its legal description and its street address or any common designation; (2) the title of the plaintiff as to which a determination is sought and the basis of the title; (3) the adverse claims to the title of the plaintiff against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims.   *See* Cal. Civ. Proc. Code § 761.020.  Additionally, "[u]nder California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt." *Montoya v. Countrywide Bank, F.S.B.*, 2009 WL 1813973, at *11 (N.D. Cal. June 25, 2009).  This rule

provides that "[t]he borrower must make a valid and viable tender of payment of the secured debt as a precondition to challenging a foreclosure sale." *Roque v. Suntrust Mortg., Inc.*, 2010 WL 546896, at *6 (N.D. Cal. Feb. 10, 2010). A plaintiff's "failure to offer tender at the pleading stage in a quiet title action is fatal." *Chan Tang v. Bank of Am., N.A.*, 2012 WL 960373, at *14 (C.D. Cal. Mar. 19, 2012).

Defendant argues Plaintiff fails to allege tender and to allege that Defendant's rights under the Loan are adverse to Plaintiff's rights to the Property. Mot. at 7. Plaintiff does not address Defendant's argument regarding her lack of allegations that Defendant's rights are adverse to her own. *See* Opp'n. Instead, Plaintiff requests leave to amend to "properly allege Plaintiff's offer to tender the delinquent amount." *Id.* at 11. In response to the Court's request for "facts . . . Plaintiff ha[s] to support her offer to tender" (Order at 2), Plaintiff explains the Loan is entitled to a modification of the original terms and that such a "modification would place the arrears . . . on the back of the loan" and would eliminate the delinquent amount (Pl.'s Suppl. Resp. at 2). This would thus eliminate the need for a tender offer. *Id.* She asserts she has the ability to furnish proof of her ability to qualify for and her entitlement to a modification. *Id.* Plaintiff further contends, without citation, "Defendant . . . is obligated under federal guidelines to provide Plaintiff with a loan modification; thus, no delinquent amount should technically be owed at the moment." *Id.*

Plaintiff's contention that she is entitled to a loan modification diverges from her original assertion that she could "properly allege Plaintiff's offer to tender the delinquent amount." Opp'n at 11; *see* Pl.'s Suppl. Resp. at 11. Now, it appears Plaintiff does not intend or is unable to allege a viable tender of payment; rather, Plaintiff seems to argue that she is not required to pay the full amount indebtedness. In any event, that she intends to seek a loan modification suggests she is unable to tender the full delinquent payment, much less the full value of the loan. *See Thompson v. Residential Credit Sols., Inc.*, 2012 WL 1565688, at *5 (E.D. Cal. May 2, 2012) ("The fact that plaintiff was seeking approval for loan modification further suggests that she is unable to tender her delinquency of over $60,000, . . . much less the full value of the loan." (internal citation omitted)). "'Simply put, if the offeror is without the money necessary to make the offer good and knows it, the tender is without legal force or effect.'" *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d

United States District Court
Northern District of California

1088, 1107 (E.D. Cal. 2014) (quoting *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 118 (Ct. App. 1971)).  As such, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiff's quiet title claim.  As Plaintiff failed to demonstrate in her Supplemental Response that she possesses facts necessary to allege an offer of tender, the Court dismisses this claim WITHOUT LEAVE TO AMEND.  Accordingly, the Court need not address Defendant's argument regarding Plaintiff's failure to allege an adverse interest.

> ### 2.   FTC Act Claim

Count Three asserts a violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  Compl. ¶¶ 39-46.  Section 5 of the FTC Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1). It further provides that "*[t]he Commission* is hereby empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."[3]  *Id.* at § 45(a)(2) (emphasis added).  "[P]rivate litigants may not invoke the jurisdiction of the federal district courts by alleging that defendants engaged in business practices proscribed by s 5(a)(1).  The [FTC] Act rests initial remedial power solely in the Federal Trade Commission." *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981).

Defendant argues Plaintiff fails to allege facts that establish the FTC Act is applicable to her claims.  Mot. at 8.  In response, Plaintiff contends the Complaint alleges "Defendant engaged in deceptive acts and the mortgage loan industry certainly affects commerce."  Opp'n at 11.  Further, "Defendant[] . . . does not explain how the statute fails to apply to its conduct."  *Id.*

Plaintiff lacks standing to assert violations of the FTC Act.  Accordingly, the Court DISMISSES Plaintiff's third claim.  Given Plaintiff's lack of standing, amendment would be futile, and the Court dismisses this claim WITHOUT LEAVE TO AMEND.

> ### 4.   RESPA Claim

Court Four asserts a violation of RESPA, 12 U.S.C. § 2605(e).  *See* Compl. ¶¶ 50-57.

---

[3] The "Commission" refers to the Federal Trade Commission.  *See* 15 U.S.C. § 41.

RESPA allows a borrower or its agent to submit a QWR to a servicer of a federally related mortgage loan "for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). To constitute a QWR, the request must "(1) reasonably identif[y] the borrower's name and account, (2) either state[] the borrower's 'reasons for the belief . . . that the account is in error' or 'provide[] sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seek[] 'information relating to the servicing of the loan.'" *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting 12 U.S.C. § 2605(e)(1)(A)–(B)) (ellipses in original; brackets omitted).

Servicers must respond to a QWR in one of three ways. First, the servicer may make the appropriate corrections to the borrower's account. *Id.* § 2605(e)(2)(A). Second, it may conduct an investigation and either provide the borrower with a written explanation as to the reasons the servicer believes the borrower's account is correct or the requested information or an explanation. *Id.* § 2605(e)(2)(B)(i)-(ii). Third, it may conduct an investigation and provide the borrower with the requested information or a written explanation of why the servicer cannot obtain the requested information. *Id.* § 2605(e)(2)(C)(i)-(ii). "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)).

Defendant argues Plaintiff fails to allege she submitted a QWR as defined by RESPA. Mot. at 9; *see* 12 U.S.C. § 2605(e)(1)(B) (setting forth required contents of QWR). Specifically, Defendant contends "letters challenging only the [L]oan's validity are not qualified written requests that give rise to a duty to respond under § 2605(e)." Mot. at 9. Plaintiff contends that the information she seeks falls "within the scope of servicing the Loan because the servicer of the [L]oan is responsible for . . . providing the loan information sought by Plaintiff." Opp'n at 12.

As alleged, Plaintiff's correspondence does not constitute a QWR. Her allegation that her "written requests for information about Plaintiffs account and requests for validation were 'qualified written requests' within the meaning of RESPA" (Compl. ¶ 54) is conclusory and does not show how her requests complied with the statutory requirements. There is nothing to suggest,

1    for instance, that Plaintiff provided her name and account number or included a statement as to

2    why she believed her account was in error.  *See id.* ¶¶ 50-57.

3          The Complaint also fails to allege that Plaintiff sought information related to the servicing

4    of her Loan.  Plaintiff's "correspondence requested pertinent documents pertaining to the loan's

5    origination, as well as assignments and transfers of the Loan and its accompanying deed of trust."

6    *Id.* ¶ 53.  However, Defendant "has failed to provide evidence of documentation detailing updated

7    assignments of ownership or necessary proof of its custodial servicing obligations to the Loan"

8    and "proof of purchases, affidavits of sale, and proper documentation detailing the restructuring of

9    assignments of the deed of trust."  *Id.*

10         Section 2605 defines "servicing" as "receiving any scheduled periodic payments from a

11   borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and

12   making the payments of principal and interest and such other payments[.]"  15 U.S.C. §

13   2605(i)(3).  This definition "does not include the transactions and circumstances surrounding a

14   loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt

15   or the terms of a loan agreement."  *Medrano*, 704 F.3d at 666–67.  "Such events *precede* the

16   servicer's role in receiving the borrower's payments and making payments to the borrower's

17   creditors."  *Id.* at 667 (emphasis in original).  RESPA therefore "distinguishes between letters that

18   relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the

19   borrower's contractual relationship with the lender, on the other."  *Id.*

20         Plaintiff's correspondence falls into the latter category.  She alleges Defendant is the

21   Loan's servicer (*see* Compl. ¶ 51), but Plaintiff's request for information does not concern

22   payments made on the loan.  *See* 12 U.S.C. § 2605(e)(1)(A) ("[A] qualified written request from

23   the borrower (or an agent of the borrower) for information [must] relat[e] to the *servicing* of such

24   loan . . . ." (emphasis added)).  Rather, Plaintiff seeks information regarding the Loan's

25   origination.  As a servicer, Defendant is unlikely to possess information regarding the Loan's

26   origination.  *See Medrano*, 704 F.3d at 667 ("[O]nly servicers of loans are subject to § 2605(e)'s

27   duty to respond—and they are unlikely to have information regarding those loans' originations.").

28   The Complaint does not contain facts that suggest otherwise.  Thus, Plaintiff's requests for

United States District Court
Northern District of California

information, as alleged, do not constitute QWRs that create a duty for Defendant to respond. *See id.* ("[L]etters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." (footnote omitted)).

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's RESPA claim. In an abundance of caution, however, the Court GRANTS Plaintiff leave to amend provided that she can allege facts that show her requests to Defendant contained the necessary information set forth in 15 U.S.C. § 2605(e)(1)(B) and sought information concerning the servicing of the Loan, not its origination.

## CONCLUSION

Based on the foregoing analysis, the Court orders the following:

1. Defendant's Motion under Rule 12(b)(7) is GRANTED WITH LEAVE TO AMEND. Plaintiff may amend the FAC to add Melecio Magaluyo as a co-plaintiff or to state the reasons why he is not joined as a party in accordance with Rule 19(c).

2. Plaintiff's fraud and RESPA claims are DISMISSED pursuant to Rule 12(b)(6) WITH LEAVE TO AMEND.

3. Plaintiff's quiet title and FTC Act claims are DISMISSED pursuant to Rule 12(b)(6) WITHOUT LEAVE TO AMEND.

Plaintiff shall file her amended complaint by **February 16, 2017**.

**IT IS SO ORDERED.**

Dated: January 26, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

19

United States District Court
Northern District of California