UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYLLIS SPARKS-MAGDALUYO, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> NEW PENN FINANCIAL, LLC, <br><br> Defendant. | Case No. 16-cv-04223-MEJ <br><br> **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Re: Dkt. No. 37 |

## INTRODUCTION

Plaintiffs Phyllis Magdaluyo and Melecio Magdaluyo (together, "Plaintiffs") assert two claims for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and common law fraud against Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Defendant") arising out of foreclosure-related activities on Plaintiffs' real property. *See* First Am. Compl ("FAC"), Dkt. No. 30. Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Mot., Dkt. No. 37. Plaintiffs filed an Opposition (Dkt. No. 40), and Defendant filed a Reply (Dkt. No. 41). The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 31, 2017 hearing scheduled in this matter. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's Motion for the following reasons.

# BACKGROUND[1]

On or about March 22, 2005, Plaintiffs obtained a $377,000 loan (the "Loan") from Quick Loan Funding, Inc. ("Quick Loan"). FAC ¶ 9. The Loan was secured by a deed of trust encumbering real property located at 216 Bridgeview Drive, San Francisco, California 94590 (the "Property"). *Id.*; *see also id.* ¶ 3.

On or about April 15, 2008, the Property was sold at a public auction to Robert T. Dunn and the Dunn Family Trust ("Dunn") for $112,475.12. *Id.* ¶ 10. On or about April 28, 2008, FCI National Lender Services, Inc. ("FCI"), the purported trustee of the loan, recorded with the San Francisco County Recorder a Trustee's Deed Upon Sale. *Id.* ¶ 11. According to this document, FCI served as a trustor for a deed of trust securing the Property dated September 13, 2006 and executed by Plaintiffs. *Id.* The Deed Upon Sale further provided that FCI granted its rights and interests to the Property to Dunn and to Homesavers, a California Corporation. *Id.* Dunn received a 99% undivided interest and Homesavers received a 1% undivided interest. *Id.* The Deed Upon Sale states the Deed of Trust was recorded on June 29, 2006. *Id.* "[T]he purported conveyance date of the deed of trust dated September 13, 2006 is claimed to have taken place more than three months prior to the deed of trust's recording date." *Id.*

Between 2012 and 2015, the Loan was assigned to various entities. On or about April 17, 2012, Quick Loan assigned the Deed of Trust to The Bank of New York Mellon, formerly known as The Bank of New York, as trustee for the Certificate holders of CWABS, Inc., Asset-Backed

---

[1] The parties again present vastly different descriptions of the relevant events. *See* Order, Dkt. No. 28 at 1 n.1 (noting same). Plaintiffs allege there was only one loan dated March 22, 2005. *See* FAC ¶ 9. Defendant contends Plaintiffs obtained *two* loans—one in March 2005 and another in September 2006—and that they conflate the events concerning them. *See* Mot. at 6; *see also* Request for Judicial Notice ("RJN"), Exs. A (Deed of Trust dated March 22, 2005) & G (Deed of Trust dated Sept. 13, 2006), Dkt. No. 38. Defendant contends any alleged fraudulent conduct stems from the September 2006 loan in which Defendant has no involvement. Plaintiffs dispute Defendant's assertion that there are two loans. *See* Opp'n at 6 ("Defendant misleads the Court by claiming that Plaintiff is confused as to the nature of her liens."). Plaintiffs do not address the documents attached to the RJN. *See* Opp'n. Whether or not there were two loans and the extent of Defendant's involvement in the second loan, if any, is a factual dispute the Court cannot resolve at this juncture. For purposes of this Rule 12(c) Motion, the Court must accept the allegations in the FAC as true. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Certificates, Series 2005-SD2. *Id.* ¶ 12. "At some point subsequent to the Loan's origination, Bank of America, N.A. purported to be the servicer of the Loan." *Id.* ¶ 13. On or about February 15, 2014, Resurgent Capital Services became the Loan's servicer. *Id.* ¶ 14. Defendant became the servicer on or about March 1, 2014 and subsequently began foreclosure proceedings against the Property. *Id.* ¶ 15. Defendant and its alleged agent, the Law Offices of Les Ziev, have also represented "that an owner of the [L]oan is Homesavers, a California Corporation." *Id.* ¶ 18.

On or about October 26, 2015, Plaintiffs sent Defendant a "'qualified written request' in an attempt to determine whether or not [Defendant] had the proper authority to foreclose against the [] Property pursuant to the Loan and its accompanying deed of trust." *Id.* ¶ 16. In so doing, Plaintiffs requested "pertinent documents pertaining to the [L]oan's origination," plus assignments and transfers of the Loan. *Id.* To date, Defendant has failed to provide documents detailing updated assignments of ownership or necessary proof of its custodial servicing obligations to the Loan, as well as proof of purchases, affidavits of sale, and proper documentation detailing the restructuring of the Deed of Trust. *Id.*

Despite its failure "to provide documentation legitimizing its ability to foreclose on the [] Property[,]" Defendant, through Ziev, scheduled trustee sales for November 9, 2015 and December 9 and 22, 2015. *Id.* ¶ 17. Plaintiffs do not allege the Property has in fact been sold. *See* FAC.

Ms. Magdaluyo initiated this action on July 26, 2016. *See* Compl., Dkt. No. 1. She asserted claims for (1) fraud; (2) quiet title; (3) violations of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a); and (4) violations of RESPA. *Id.* ¶¶ 19-57. The Court dismissed the Complaint pursuant to Rule 12(b)(6) and (7). *See* Order. First, it dismissed the Complaint on the ground that Ms. Magdaluyo failed to join Mr. Magdaluyo as a plaintiff as a necessary party. Order at 7-10. Second, the Court found Ms. Magdaluyo failed to state any claims. *Id.* at 10-19. It dismissed her quiet title and FTC Act claims with prejudice (*id.* at 14-16), but granted her leave to amend her fraud and RESPA claims (*id.* at 11-14, 16-19). Specifically, the Court permitted Ms. Magdaluyo to amend her fraud claim to allege "specific facts that connect Defendant to the fraudulent activity and that shows the delayed discovery rule applies" (*id.* at 14) and to amend her

RESPA claim to "allege facts that show her requests to Defendant contained the necessary information set forth in 15 U.S.C. § 2605(e)(1)(B) and sought information concerning the servicing of the Loan, not its origination" (*id.* at 19).

Mr. Magdaluyo joined Ms. Magdaluyo in the FAC, which they filed on February 16, 2017. *See* FAC. The FAC asserts two claims for fraud and a violation of RESPA. *Id.* ¶¶ 19-28, 50-57.[2] Defendant now moves for judgment on the pleadings. *See* Mot.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Courts analyzing a Rule 12(c) motion must "accept the factual allegations in the complaint as true, and view them in a light most favorable to the plaintiff." *LeGras v. AETNA Life Ins. Co.*,

---

[2] The FAC mis-numbers certain paragraphs. For instance, it omits paragraphs 29 through 49, and paragraph 28 follows paragraph 56 and precedes paragraph 57. For purposes of this Order, pin citations to the FAC are as they appear in that document.

4

1   786 F.3d 1233, 1236 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1448 (2016).  However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

"Where a court grants . . . a motion for judgment on the pleadings under Rule 12(c), leave to amend should be freely given if it is possible that further factual allegations will cure any defect." *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1113 (N.D. Cal. 2013).

## REQUEST FOR JUDICIAL NOTICE

Before turning to the parties' substantive arguments, the Court addresses Defendant's Request for Judicial Notice. *See* RJN.  Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (taking judicial notice of recorded deed of trust, recorded assignments of deed of trust, recorded notice of default, and recorded notice of trustee's sale).  But while courts may take judicial notice of undisputed matters of public record, they may not judicially notice "disputed facts stated in public records." *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original).

Defendant requests the Court take judicial notice of the following documents:

1. Deed of Trust dated March 2, 2005 and recorded in the official records of San Francisco Recorder's Office on March 30, 2005 as instrument number 2005-H92955500.  RJN, Ex. A.
2. Assignment Deed of Trust dated April 9, 2012, and recorded in the official records of San Francisco Recorder's Office on August 19, 2013 as instrument number 2012-J39396000. *Id.*, Ex. B.

5

3. Loan Modification Agreement, dated July 17, 2013, and recorded in the official records of San Francisco Recorder's Office on August 19, 2013 as instrument number 2013-J73201900. *Id.*, Ex. C.
4. Notice of Default dated March 30, 2015 and recorded in the official records of San Francisco Recorder's Office on April 2, 2015 as instrument number 2015-K04166600. *Id.*, Ex. D.
5. Substitution of Trustee dated November 4, 2015, and recorded in the official records of San Francisco Recorder's Office on November 12, 2015 as instrument number 2015-K15529000. *Id.*, Ex. E.
6. Notice of Trustee's Sale dated July 19, 2016, and recorded in the official records of San Francisco Recorder's Office on July 21, 2016 as instrument number 2016-K29122300. *Id.*, Ex. F.
7. Long Form Deed of Trust and Assignment of Rents for Home Equity Revolving Line of Credit dated September 14, 2006, and recorded in the official records of San Francisco Recorder's Office on September 29, 2006 as instrument number 2006-I26381400. *Id.*, Ex. G.
8. Assignment Deed of Trust dated October 3, 2006, and recorded in the official records of San Francisco Recorder's Office on October 13, 2006 as instrument number 2006-I26996300. *Id.*, Ex. H.
9. Notice of Default dated March 6, 2007, and recorded in the official records of San Francisco Recorder's Office on March 8, 2007 as instrument number 2007-I3491800. *Id.*, Ex. I.
10. Trustee's Deed Upon Sale dated April 15, 2008, and recorded in the official records of San Francisco Recorder's Office on April 28, 2008 as instrument number 2008-I57355600. *Id.*, Ex. J.

The Court took judicial notice of these documents in considering Defendant's Motion to Dismiss. *See* Order at 5-7. As these documents are in the public record and as Plaintiffs do not object to Defendant's request (*see* Opp'n), the Court again takes judicial notice of them.

**DISCUSSION**

Other than abandoning the quiet title and FTC Act claims, the FAC evidences only two substantive changes from the original Complaint: it names Mr. Magdaluyo as a plaintiff and adds one paragraph. *See* FAC at 1 & ¶ 54. The allegations otherwise are virtually identical. *Compare* Compl. *with* FAC.

**A. Fraud**

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)).

Rule 9(b) requires a plaintiff alleging fraud or mistake to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must establish "more than the neutral facts necessary to identify the transaction": she "must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). This "includ[es] the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted). This "give[s] defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

In dismissing the fraud claim, the Court found

> [t]he Complaint alleges Defendant made "affirmative" misrepresentations to Plaintiff and perpetuated its fraud through (1) FCI's April 28, 2008 recording of a Deed Upon Sale for a deed of trust, the legitimacy of which "is called into question since the purported conveyance date of the deed of trust dated September 13, 2006 is claimed to have taken place more than three months prior to the deed of trust's recording date"; (2) Defendant's and Zieve's "alleg[ations] that an owner of the [L]oan is Homesavers" where "the California Secretary of State shows no active corporation or

7

> entity by the name of 'Homesavers'"; (3) Defendant's "communicat[ions] to Plaintiff that i[t] has the authority to collect payments pursuant to the Loan" when Defendant does not in fact have such authority; (4) Defendant "communicated to Plaintiff that i[t] has the authority to foreclose upon the [] Property on a number of occasions by scheduling trustee sale dates . . . including . . . November 9, 2015; December 9, 2015; and December 22, 2015." *Id.* ¶¶ 24(a)-(d). Plaintiff asserts that she justifiably relied on and was harmed by Defendant's misrepresentations. *Id.* ¶¶ 25-26.
>
> Plaintiff fails to allege particularized facts as required by Rule 9(b). For instance, Plaintiff's contends that "FCI . . . recorded a Deed Upon Sale with the San Francisco County Recorder" and questions the legitimacy of this document. Compl. ¶ 24(a). But she does not attribute this conduct to Defendant: there are no allegations that FCI acted upon Defendant's orders, or that Defendant was otherwise involved or had any interest in the recording of the Deed Upon Sale. Plaintiff's allegations regarding Defendant's fraudulent communications to Plaintiff are also conclusory and lack specificity. *See* Compl. ¶ 24(b)-(d). She does not provide the date on which Defendant alleged that Homesavers is an owner of the Loan, nor does she allege the manner in which Defendant communicated this to her. The same applies to her allegation that Defendant stated it has the authority to collect payments under the Loan: Plaintiff does not explain when or how Defendant made this assertion.

Order at 12-13.

The FAC does not address the deficiencies the Court identified in its Order that caused the Court to dismiss the original fraud claim. Despite clear directions from the Court, Plaintiffs again fail to connect FCI's conduct to Defendant. *See* FAC. Moreover, while Plaintiffs identify Defendant and Ziev as making allegedly fraudulent communications generally relating to the owner of the Loan and Defendant's ability to collect payments and foreclose on the Loan, Plaintiffs still fail to plead facts as to when, where, or how the communications were made. In short, the FAC contains no particularized facts showing Defendant committed fraud.

Instead of addressing their failure to plead fraud with particularity in their Opposition, Plaintiffs focus on the statute of limitations and argue the delayed discovery rule allows them to proceed on their fraud claim. Opp'n at 8-9. Assuming, arguendo, that they had pleaded fraud with sufficient particularity to survive this Motion, Plaintiffs have not sufficiently pleaded the application of the delayed discovery rule.

California law imposes a three-year statute of limitations on fraud claims, but it "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the

fraud or mistake." Cal. Civ. Proc. Code § 338(d). "Code of Civil Procedure section 338, subdivision (d), effectively codifies the delayed discovery rule in connection with actions for fraud[.]" *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1057 (9th Cir. 2008) (citing *Brandon G. v. Gray*, 111 Cal. App. 4th 29, 35 (2003)). "'Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.'" *Amacker v. Bank of Am.*, 2014 WL 4771668, at *4 (N.D. Cal. Sept. 24, 2014) (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988)). The delayed discovery rule provides that "a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005). "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007).

The Court previously found the three-year statute of limitations barred this claim:

> Plaintiff alleges that at least some of the fraudulent activity took place in 2008, including the sale of the Property and the recording of the Deed Upon Sale. *See* Compl. ¶¶ 10-11, 24(a). Plaintiff fails to plead facts that show how and when she discovered the fraudulent activity and why, despite reasonable diligence, she was unable to discover it earlier. Plaintiff initiated this action in 2016, approximately eight years after the alleged fraud occurred. Plaintiff thus fails to adequately allege the delayed discovery rule applies. And, as discussed above, the Complaint does not specify dates for the other allegedly fraudulent acts for the Court to believe that they fall within the statute of limitations.

Order at 14. Plaintiffs argue "[t]he statute of limitations began to run when Plaintiffs *discovered* the existence of their claims." Opp'n at 9 (emphasis in original). But Plaintiffs ignore the fact that they "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *E-Fab*, 153 Cal. App. 4th at 1319. The FAC is again devoid of allegations as to when and how Plaintiffs had reason to

9

suspect an injury and some wrongful conduct. "The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." *Fox*, 35 Cal. 4th at 807-08 (internal quotation marks and footnote omitted). The FAC does not contain allegations sufficient to show why Plaintiffs could not have discovered the factual basis for their fraud claim earlier, despite reasonable diligence. For instance, Plaintiffs allege "[o]n or about April 28, 2008" the Loan's trustee "recorded a Deed Upon Sale with the San Francisco County Recorder." FAC ¶ 24(a). Plaintiffs further allege "the Deed Upon Sale . . . claim[s] the . . . deed of trust was recorded on June 29, 2006"; however, "[t]he legitimacy of this document is called into question since the purported conveyance date of the deed of trust dated September 13, 2006 is claimed to have taken place more than three months prior to the deed of trust's recording date." *Id.* Plaintiffs offer no facts or argument as to why they should not have had reason to suspect the existence alleged fraud in 2008, when the Deed Upon Sale was recorded. The Court therefore finds Plaintiffs once again fail to show the delayed discovery rule applies.

Plaintiffs also argue the FAC contains "alleg[ations] that Defendant committed a number of misrepresentations in recent years that fall within the statute of limitations even if the discovery rule is not applied." Opp'n at 9. To the extent Plaintiffs refer to the communications concerning Defendant's "authority to collect payments pursuant to the Loan" or "to foreclose upon the . . . Property" (FAC ¶¶ 24(c)-(d)), as explained above, Plaintiffs do not provide dates as to when these communications occurred. *See* FAC. In dismissing the original Complaint, the Court held these same allegations did not satisfy Rule 9(b)'s heightened pleading standard. *See* Order at 12 (finding "allegation that Defendant stated it has the authority to collect payments under the Loan" was conclusory and lacked specificity because "Plaintiff d[id] not explain when or how Defendant made this assertion."); *see also* Compl. ¶¶ 24(c)-(d). Plaintiffs do not remedy this deficiency in their FAC: they still do not allege when, how, or where Defendant made these allegedly fraudulent representations. In particular, without more information as to *when* Defendant made these communications, the Court cannot find they fall within the statute of limitations period.

10

In short, the FAC suffers from the same defects identified in the Court's prior Order. The Court accordingly GRANTS Defendant's Motion as to Plaintiffs' fraud claim.

**B.     RESPA**

RESPA allows a borrower or its agent to submit a qualified written request ("QWR") to a servicer of a federally related mortgage loan "for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). To constitute a QWR, the request must "(1) reasonably identif[y] the borrower's name and account, (2) either state[] the borrower's 'reasons for the belief . . . that the account is in error' or 'provide[] sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seek[] 'information relating to the servicing of the loan.'" *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting 12 U.S.C. § 2605(e)(1)(A)–(B)) (ellipses in original; some brackets omitted).

Servicers must respond to a QWR in one of three ways. First, the servicer may make the appropriate corrections to the borrower's account. 12 U.S.C. § 2605 (e)(2)(A). Second, it may conduct an investigation and either provide the borrower with a written explanation as to the reasons the servicer believes the borrower's account is correct or the requested information or an explanation. *Id.* § 2605(e)(2)(B)(i)-(ii). Third, it may conduct an investigation and provide the borrower with the requested information or a written explanation of why the servicer cannot obtain the requested information. *Id.* § 2605(e)(2)(C)(i)-(ii). "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Medrano*, 704 F.3d at 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)).

The Court previously found that

> [a]s alleged, Plaintiff's correspondence does not constitute a QWR. Her allegation that her "written requests for information about Plaintiffs account and requests for validation were 'qualified written requests' within the meaning of RESPA" (Compl. ¶ 54) is conclusory and does not show how her requests complied with the statutory requirements. There is nothing to suggest, for instance, that Plaintiff provided her name and account number or included a statement as to why she believed her account was in error. *See id.* ¶¶ 50-57.
>
> The Complaint also fails to allege that Plaintiff sought information

related to the servicing of her Loan. Plaintiff's "correspondence requested pertinent documents pertaining to the loan's origination, as well as assignments and transfers of the Loan and its accompanying deed of trust." *Id.* ¶ 53. However, Defendant "has failed to provide evidence of documentation detailing updated assignments of ownership or necessary proof of its custodial servicing obligations to the Loan" and "proof of purchases, affidavits of sale, and proper documentation detailing the restructuring of assignments of the deed of trust." *Id.*

Section 2605 defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments[.]" 15 U.S.C. § 2605(i)(3). This definition "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Medrano*, 704 F.3d at 666–67. "Such events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." *Id.* at 667 (emphasis in original). RESPA therefore "distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other." *Id.*

Plaintiff's correspondence falls into the latter category. She alleges Defendant is the Loan's servicer (*see* Compl. ¶ 51), but Plaintiff's request for information does not concern payments made on the loan. *See* 12 U.S.C. § 2605(e)(1)(A) ("[A] qualified written request from the borrower (or an agent of the borrower) for information [must] relat[e] to the *servicing* of such loan . . . ." (emphasis added)). Rather, Plaintiff seeks information regarding the Loan's origination. As a servicer, Defendant is unlikely to possess information regarding the Loan's origination. *See Medrano*, 704 F.3d at 667 ("[O]nly servicers of loans are subject to § 2605(e)'s duty to respond—and they are unlikely to have information regarding those loans' originations."). The Complaint does not contain facts that suggest otherwise. Thus, Plaintiff's requests for information, as alleged, do not constitute QWRs that create a duty for Defendant to respond. *See id.* ("[L]etters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." (footnote omitted)).

Order at 17-19.

As with the fraud claim, the FAC repeats verbatim the same allegations regarding the RESPA claim that the Court found insufficient in the original Complaint. *Compare* Compl. ¶¶ 50-57 *with* FAC ¶¶ 28, 50-57. Only the following allegation is new:

> The information sought by Plaintiffs' written requests related to Defendant's servicing of the Loan since Defendant (as a servicer of the Loan) has an obligation to provide documents pertaining to the

12

> Loan's origination and the Loan's assignments and transfers. Furthermore, the information sought by Plaintiffs would enable Plaintiffs to determine the legitimacy of Defendant's current servicer obligations since the transfers and obligations relating to the Loan would justify Defendant's right to service the Loan.

FAC ¶ 54. Paragraph 54 does not cure the defects the Court previously identified. *See* Order at 16-19. On the contrary, it demonstrates Plaintiffs have not stated a RESPA claim.

The Ninth Circuit explains that

> a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's "reasons for the belief . . . that the account is in error" or "provides sufficient detail to the servicer regarding other information sought by the borrower," and (3) seeks "information relating to the servicing of [the] loan.

*Medrano*, 704 F.3d at 666 (quoting 12 U.S.C. § 2605(e)(1)(A)–(B)) (edits in *Medrano*). Plaintiffs do not allege any facts showing their written request contained any of these requirements such that Defendant was required to respond pursuant to RESPA. *See* FAC. In particular, Plaintiffs do not allege the request concerned payments on the Loan. They do, however, clearly state they sought information about the Loan's origination, assignments, and transfers. FAC ¶ 54. This does not qualify as a request regarding servicing, which RESPA defines as "any scheduled periodic payments from a borrower pursuant to the terms of any loan, including . . . payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Plaintiffs argue "all information sought by Plaintiff[s] is within the scope of servicing the [L]oan because the servicer of the [L]oan is responsible for (and the only entity capable of) providing the loan information sought by Plaintiff[s]." Opp'n at 10. Not so. RESPA's definition of "servicing" "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." *Medrano*, 704 F.3d at 666. "[T]hat the letter must request information relating to servicing [] ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Id.* (emphasis in original).

13

Because the FAC alleges no facts showing Plaintiffs' request for information constitutes a QWR imposing a statutory duty on Defendant to respond, the Court finds Plaintiffs again fail to state a plausible claim that Defendant violated RESPA. Accordingly, the Court GRANTS Defendant's Motion as to the RESPA claim.

### C.     Leave to Amend

"[L]eave to amend is not automatic upon granting a motion for judgment on the pleadings under Rule 12(c), but is within the Court's discretion." *Guidiville Rancheria of Cal. v. United States*, 2014 WL 3749227, at *3 (N.D. Cal. July 24, 2014), *rev'd in part sub nom. Guidiville Rancheria of Cal. v. United States*, 2017 WL 3327828 (9th Cir. Aug. 4, 2017). Plaintiffs argue that if the Court grants Defendant's Motion, it should allow Plaintiffs a further opportunity to amend. Opp'n at 10. They contend "permitting Plaintiffs to amend their FAC would not be futile, as Plaintiffs are easily capable of amending their FAC to remedy any deficiencies identified by the Court." *Id.* The Court previously granted leave to amend and specifically identified the deficiencies in the allegations. *See generally* Order. Plaintiffs did not address those deficiencies; they instead submitted a FAC which, as noted, is virtually identical to the initial Complaint. *Compare* Compl. *with* FAC. Plaintiffs do not explain how they are "easily capable of amending their FAC to remedy any deficiencies." They do not explain why there were previously unable to meaningfully address the identified defects or why they believe they can now do so. There is nothing in the record that suggests Plaintiffs now possess facts to which they did not have access when they filed the FAC and therefore could not allege at that time.

But courts generally grant leave to amend upon granting a Rule 12(c) motion. *See Lopez*, 5 F. Supp. 3d at 1113; *Young v. Am. Gen. Life Ins. Co.*, 2014 WL 4960240, at *3 (E.D. Cal. Oct. 2, 2014) ("There is no binding authority prohibiting amendment when requested by the non-moving party in its opposition to a Rule 12(c) motion for judgment on the pleadings. Courts have generally allowed amendment pursuant to the liberal pleadings standards of the Federal Rules of Civil Procedure." (collecting cases)). In the interests of justice, the Court will allow Plaintiffs one final opportunity to amend. That said, "[i]t is well established that district courts have inherent power to control their docket." *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir.

14

2010) (internal quotation marks and edits omitted). The Court and the parties also share the responsibility to litigate this matter efficiently. Fed. R. Civ. P. 1. Given Plaintiffs' prior failure to substantively address the deficiencies the Court identified in its prior Order and in the interests of judicial economy, the Court **ORDERS** the following. No later than **September 6, 2017**, Plaintiffs shall file a motion for leave to file a second amended complaint which specifically identifies their proposed amendments. To avoid any potential unnecessary expenditure of Defendant's time and resources, Defendant need not respond to the motion unless and until the Court directs it to do so.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings. Plaintiffs shall file a motion for leave to amend no later than **September 6, 2017**. As Plaintiffs are proceeding pro se, the Court reminds them they may seek assistance from the Legal Help Center, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco, by calling 415-782-8982, or by signing up for an appointment on the 15th Floor, Room 2796, of the Federal Courthouse in San Francisco, 450 Golden Gate Avenue, San Francisco, California. There is also a Legal Help Center in Oakland, located on the 4th Floor, Room 470S, of the United States Courthouse, 1301 Clay Street, Oakland. At the Legal Help Center, you will be able to speak with an attorney who may be able to provide basic legal help but not representation. More information is available at http://cand.uscourts.gov/helpcentersf.

Plaintiffs may also obtain a copy of the Court's Handbook for Litigants Without a Lawyer, which is available free of charge in the Clerk's Office, or online at http://cand.uscourts.gov/prosehandbk. This handbook provides an explanation of the required components of a complaint.

**IT IS SO ORDERED.**

Dated: August 16, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge