UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYLLIS SPARKS-MAGDALUYO, ET AL., <br><br>Plaintiffs, <br><br>v. <br><br>NEW PENN FINANCIAL, LLC, <br><br>Defendant. | Case No. 16-cv-04223-MEJ <br><br>**ORDER RE: MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** <br><br>Re: Dkt. No. 46 |

## INTRODUCTION[1]

On August 16, 2017, the Court granted Defendant New Penn Financial, LLC dba Shellpoint Mortgage Servicing's Motion for Judgment on the Pleadings. *See* Pleadings Order, Dkt. No. 44. The Court found Plaintiffs Phyllis Magdaluyo and Melecio Magdaluyo's First Amended Complaint ("FAC") was virtually identical to the initial Complaint and did not cure the deficiencies which caused the Court to dismiss the Complaint. Pleadings Order at 7, 12, 14; *see* MTD Order, Dkt. No. 28; *compare* Compl., Dkt. No. 1 *with* FAC, Dkt. No. 30. The Court nevertheless permitted Plaintiffs one final opportunity to amend and ordered them "to file a motion for leave to file a second amended complaint which specifically identifies their proposed amendments." Pleadings Order at 14-15.

On September 6, 2017, Plaintiffs filed this Motion, as well as a proposed Second Amended Complaint ("SAC"). *See* Mot., Dkt. No. 46; Proposed SAC, Dkt. No. 45. Defendant filed an Opposition (Dkt. No. 50) and Plaintiffs filed a Reply (Dkt. No. 54). The Court previously found

---

[1] The Court's prior Orders contain a detailed factual history of this case. *See* Order re: Mot. for J. on Pleadings ("Pleadings Order") at 2-4, Dkt. No. 44; Order re: Mot. to Dismiss ("MTD Order") at 1-3, Dkt. No. 28.

1  this matter suitable for disposition without oral argument. Dkt. No. 53; *see* Fed. R. Civ. P. 78(b);
2  Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the
3  record in this case, the Court **DENIES** the Motion for the following reasons.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1). Outside of this timeframe, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted). "Not all of the factors merit equal weight. . . . [I]t is the consideration of prejudice to the opposing party that carries the greatest weight. Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under *Rule 15(a)* in favor of granting leave to amend." *Id.* at 1052 (emphasis in original). "Denials of motions for leave to amend have been reversed when lacking a contemporaneous specific finding by the district court of prejudice to the opposing party, bad faith by the moving party, or futility of amendment." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987).

## REQUEST FOR JUDICIAL NOTICE

Defendant requests the Court take judicial notice of several documents. Request for Judicial Notice ("RJN"), Dkt. No. 51. Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known

within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (taking judicial notice of recorded deed of trust, recorded assignments of deed of trust, recorded notice of default, and recorded notice of trustee's sale). But while courts may take judicial notice of undisputed matters of public record, they may not judicially notice "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original).

Defendant asks the Court to take judicial notice of the following documents:

1. Deed of Trust dated March 2, 2005 and recorded in the official records of San Francisco Recorder's Office on March 30, 2005 as instrument number 2005-H92955500. RJN, Ex. A.

2. Assignment Deed of Trust dated April 9, 2012, and recorded in the official records of San Francisco Recorder's Office on August 19, 2013 as instrument number 2012-J39396000. *Id.*, Ex. B.

3. Loan Modification Agreement, dated July 17, 2013, and recorded in the official records of San Francisco Recorder's Office on August 19, 2013 as instrument number 2013-J73201900. *Id.*, Ex. C.

4. Notice of Default dated March 30, 2015 and recorded in the official records of San Francisco Recorder's Office on April 2, 2015 as instrument number 2015-K04166600. *Id.*, Ex. D.

5. Substitution of Trustee dated November 4, 2015, and recorded in the official records of San Francisco Recorder's Office on November 12, 2015 as instrument number 2015-K15529000. *Id.*, Ex. E.

6. Notice of Trustee's Sale dated July 19, 2016, and recorded in the official records of San Francisco Recorder's Office on July 21, 2016 as instrument number 2016-K29122300. *Id.*, Ex. F.

3

7. Long Form Deed of Trust and Assignment of Rents for Home Equity Revolving Line of Credit dated September 14, 2006, and recorded in the official records of San Francisco Recorder's Office on September 29, 2006 as instrument number 2006-I26381400. *Id.*, Ex. G.

8. Assignment Deed of Trust dated October 3, 2006, and recorded in the official records of San Francisco Recorder's Office on October 13, 2006 as instrument number 2006-I26996300. *Id.*, Ex. H.

9. Notice of Default dated March 6, 2007, and recorded in the official records of San Francisco Recorder's Office on March 8, 2007 as instrument number 2007-I3491800. *Id.*, Ex. I.

10. Trustee's Deed Upon Sale dated April 15, 2008, and recorded in the official records of San Francisco Recorder's Office on April 28, 2008 as instrument number 2008-I57355600. *Id.*, Ex. J.

The Court previously took judicial notice of these documents when considering Defendant's Motion to Dismiss and Motion for Judgment on the pleadings. *See* MTD Order at 5-7; Pleadings Order at 5-6. As these documents are in the public record and as Plaintiffs do not object to Defendant's request (*see* Reply), the Court again takes judicial notice of their existence, but not for truth of the facts stated therein.[2]

**DISCUSSION**

In dismissing the Complaint, the Court granted leave to amend two claims: a fraud claim and a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605. MTD Order at 11-14, 16-19. Plaintiffs identify the following changes to the proposed SAC, which they argue address the defects to those two claims the Court identified in its Pleadings Order. As to their fraud claim, Plaintiffs contend the SAC connects nonparty FCI National Lender Services, Inc.'s ("FCI") conduct to Defendant; describes the fraud with specificity; and provides

---

[2] Defendant relies on these documents in support of its contention that Plaintiffs in fact obtained two loans, and that Defendant is the servicer only for the first loan. *See* Opp'n at 3-4 (describing Plaintiffs' senior and junior liens). The Court will not resolve questions of fact at this stage, as this is more appropriate for a motion for summary judgment.

4

additional information showing why the delayed discovery rule applies. Mot. at 4 (citing Proposed SAC ¶¶ 24(a), (c), (d)). With respect to their RESPA claim, Plaintiffs argue the SAC alleges "additional information to explain how their written communications related to loan servicing." *Id.* (citing Proposed SAC ¶¶ 53-54).

**A.     Futility of Amendment**

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). The standard to be applied is identical to that on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Id.*

To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted) (internal quotation marks omitted).

1.      Fraud

In California, "[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).

The Court dismissed Plaintiffs' fraud claim on two grounds. First, while Plaintiffs alleged nonparty FCI recorded a fraudulent Deed of Trust with the San Francisco County Recorder, neither the Complaint nor the FAC asserted facts connecting FCI's conduct to Defendant such that Defendant could be held liable for FCI's alleged fraud. MTD Order at 12 ("Plaintiff[] contends that 'FCI . . . recorded a Deed Upon Sale with the San Francisco County Recorder' and questions the legitimacy of this document. Compl. ¶ 24(a). But she does not attribute this conduct to

5

Defendant: there are no allegations that FCI acted upon Defendant's orders, or that Defendant was otherwise involved or had any interest in the recording of the Deed Upon Sale."); Pleadings Order at 8 ("Plaintiffs again fail to connect FCI's conduct to Defendant. *See* FAC."). Second, even if Plaintiffs had stated a fraud claim, the Court found Plaintiffs failed to allege facts showing the delayed discovery rule applied such that the three-year statute of limitations did not bar their claim. MTD Order at 14; Pleadings Order at 8-9.

The proposed SAC does not cure these defects. Plaintiffs argue they now plead facts connecting FCI's conduct to Defendant. Mot. at 4 (citing Proposed SAC ¶ 24(a)). The SAC alleges that

> [o]n or about April 28, 2008, FCI, the purported trustee of the Loan, recorded a Deed Upon Sale with the San Francisco County Recorder. [] The Deed Upon Sale goes on to claim the same deed of trust was recorded on June 29, 2006. **The legitimacy of this document is called into question since the purported conveyance date of the deed of trust dated September 13, 2006 is claimed to have taken place more than three months prior to the deed of trust's recording date. This is a legal impossibility.** Shellpoint, having access to all assignment documents related to the Subject Property, had record knowledge of the falsity of this Deed Upon Sale [recorded on April 28, 2008], and has enforced and benefited from the fraudulent Deed Upon Sale, and thus, has been unjustly enriched.

Proposed SAC ¶ 24(a) (emphasis in original); *see id.* ¶ 11.

Based on Plaintiffs' allegations, FCI alone is responsible for the allegedly fraudulent Deed Upon Sale. Plaintiffs offer no reason why FCI's alleged fraud should be imputed to Defendant. At most, the proposed SAC alleges FCI is the purported trustee of the Loan and Defendant is the Loan's servicer. Proposed SAC ¶¶ 11, 15. There are no facts otherwise explaining the relationship between FCI and Defendant; for instance, there is nothing to suggest that Defendant and FCI have a principal-agent relationship so as to hold Defendant liable for FCI's fraud. *See, e.g.*, *Uecker v. Zentil*, 244 Cal. App. 4th 789, 798 (2016), *as modified* (Feb. 5, 2016) ("If the principal was owned and controlled by the agent, the agent's fraud is properly imputed to the principal." (internal quotation marks and edits omitted)).

Plaintiffs allege Defendant "had record knowledge of the falsity of this Deed Upon of Sale . . . and benefited" from it. Proposed SAC ¶ 24(a). That Defendant ostensibly benefitted from the

Deed Upon Sale does not, in and of itself, show Defendant ratified the fraud. *See Hammarstrom v. Ocwen Loan Servicing, LLC*, 2011 WL 2452686, at *3 (Cal. Ct. App. June 21, 2011) ("One must accept the fruit of the fraud with knowledge of the misrepresentations or concealments by which the fraud was perpetrated in order to be liable for fraud under a ratification theory." (citing *McClung v. J.N. Watt*, 190 Cal. 155, 161-62 (1922)); *Johannson v. Wachovia Mortg., FSB*, 2012 WL 1594829, at *7 (N.D. Cal. May 4, 2012) (quoting same). Plaintiffs' allegation that Defendant knew of the fraud is conclusory. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). The proposed SAC does not allege any facts supporting Plaintiffs allegation that Defendant knew the Deed Upon Sale was fraudulent. Plaintiffs do not explain, for instance, how simply having "access to all assignment documents related to the Subject Property" would allow Defendant to recognize the Deed Upon Sale as a fraudulent document. Without such facts, Plaintiff's contention that Defendant knew of the fraud is merely conclusory and does not satisfy the facial plausibility standard.

For these reasons, the Court finds the proposed SAC does not state a fraud claim.[3] Amendment as to this claim would therefore be futile.

2. RESPA

The Court dismissed Plaintiffs' RESPA claim because they failed to allege facts that sufficiently showed their communication to Defendant constituted a qualified written request ("QWR") as defined by RESPA. Pleadings Order at 11-14; MTD Order at 16-19.

RESPA allows a borrower or its agent to submit a QWR to a servicer of a federally related mortgage loan "for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). To constitute a QWR, the request must "(1) reasonably identif[y] the borrower's name and account, (2) either state[] the borrower's 'reasons for the belief . . . that the account is in error' or

---

[3] Accordingly, the Court need not discuss whether Plaintiffs allege sufficient facts to show the delayed discovery rule would apply.

7

'provide[] sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seek[] 'information relating to the servicing of the loan.'" *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (quoting 12 U.S.C. § 2605(e)(1)(A)-(B)) (ellipses in original; some brackets omitted).

Servicers must respond to a QWR in one of three ways. First, the servicer may make the appropriate corrections to the borrower's account. 12 U.S.C. § 2605(e)(2)(A). Second, it may conduct an investigation and provide the borrower with a written explanation or clarification that includes the reasons the servicer believes the borrower's account is correct as determined by the servicer. *Id.* § 2605(e)(2)(B). Third, it may conduct an investigation and provide the borrower with a written explanation of why the information is unavailable or cannot be obtained by the servicer. *Id.* § 2605(e)(2)(C). "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Medrano*, 704 F.3d at 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)).

The proposed SAC alleges Plaintiffs sent written communications to Defendant on October 26 and 29, 2015 which constitute QWRs. Proposed SAC ¶¶ 53-55. Both communications included Plaintiffs' names and account number and requested "documentation that would clarify the debts owed, validate the debt owed by Plaintiffs, and validate Shellpoint's ability to collect debt." *Id.* ¶¶ 53-54. Plaintiffs further allege Defendant failed to timely and properly respond to either communication. *Id.* ¶ 53 ("To date, Shellpoint has neglected its servicing duties and failed to provide evidence of documentation detailing updated assignments of ownership or necessary proof of its custodial servicing obligations to the Loan . . . per RESPA and FDCPA guidelines surrounding mortgage debt validation."); *id.* ¶ 54 ("To date, Shellpoint has neglected its servicing duties and failed to provide documentation that would clarify the debt amounts owed, validate the debt owed by Plaintiffs, and validate Shellpoint's ability to collect the debt.").

The Court considers each correspondence in turn.

      a.    *October 26 Letter*

The October 26 letter requested information "related to the servicing because it requested

1   pertinent documents pertaining to the [L]oan's origination, as well as assignments and transfers of
2   the Loan and its accompanying deed of trust." *Id.* ¶ 53.

3         RESPA "distinguishes between letters that relate to borrowers' disputes regarding
4   servicing, on the one hand, and those regarding the borrower's contractual relationship with the
5   lender, on the other." *Medrano*, 704 F.3d at 667. "'Servicing' . . . does not include the
6   transactions and circumstances surrounding a loan's origination—facts that would be relevant to a
7   challenge to the validity of an underlying debt or the terms of a loan agreement. Such events
8   precede the servicer's role in receiving the borrower's payments and making payments to the
9   borrower's creditors.'" *Id.* at 666-67; *see* Pleadings Order at 13 (quoting *id.*). "[S]ervicers . . . are
10  unlikely to have information regarding those loans' originations." *Id.*; *see also* MTD Order at 19
11  (quoting *Medrano*); Pleadings Order at 12 (same).

12        The proposed SAC makes clear that the October 26 communication does not constitute a
13  QWR. Plaintiffs offer no other facts demonstrating this letter sought information concerning
14  anything other than the Loan's origination. Plaintiffs' assertion to the contrary, this does not
15  constitute a request for information about servicing. *See Medrano*, 704 F.3d at 667; *Schneidereit*
16  *v. San Luis Capital, Inc.*, 648 F. App'x 642, 643 (9th Cir. 2016) ("Plaintiffs' letter . . . related to
17  the circumstances surrounding the loan origination rather than loan payments, and thus does not
18  qualify as a QWR." (citing *Medrano*, 704 F.3d at 667)); *Petrovich v. Ocwen Loan Servicing, LLC*,
19  2016 WL 555959, at *8 (N.D. Cal. Feb. 12, 2016) ("A QWR must seek information relating to the
20  *servicing* of the loan; a request for loan origination documents is not a QWR." (emphasis in
21  original)).

22        Nor does Plaintiffs' request for information about the Loan's assignments and transfers
23  constitute a QWR. Assignments and transfers do not fall under RESPA's definition of
24  "servicing." RESPA limits "servicing" to "receiving any scheduled periodic payments from a
25  borrower pursuant to the terms of any loan . . . and making the payments of principal and interest .
26  . . as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Assignments
27  and transfers concern "transactions and circumstances surrounding a loan's origination" and are
28  not proper subjects for a QWR. *Medrano*, 704 F.3d at 666-67. Similarly, Plaintiffs fail to allege

facts showing how their request for information about the deed of trust concerns payments on the Loan or the Loan's principal balance.

As such, the proposed SAC lacks facts to show Plaintiffs' October 26 letter is a QWR.

b. *October 29 Letter*

The October 29 letter "requested documentation that would clarify the debt amounts owed, validate the debt owed by Plaintiffs, and validate Shellpoint's ability to collect the debt." Proposed SAC ¶ 54. As alleged, it appears the portion of the October 29 letter that pertains to "documentation that would clarify the debt amounts owed" may constitute a QWR.

While it is unclear what Plaintiffs intended to accomplish by "clarify[ing] the debt," this suggests Plaintiffs may have sought information about "any scheduled periodic payments . . . pursuant to the terms of any loan . . . and making the payments of principal and interest." 12 U.S.C. § 2605(i)(3); *see* Proposed SAC ¶ 54 ("The information sought concerned the amount of payments on the Loan[.]"). If this is the case, this portion of the October 29 letter may form the basis for a QWR. *See Roussel v. Wells Fargo Bank*, 2013 WL 146370, at *3 (N.D. Cal. Jan. 14, 2013) (finding letter qualified as a QWR where, "although the letter did make a number of inquiries that seem to go to the validity of the loan, it also made a number of inquiries about payments, and specifically referenced servicing at least twice.").

At this point, however, these allegations are conclusory. The proposed SAC does not contain details explaining how a request to "clarify the debt amounts owed" relate to the Loan's servicing; for instance, it does not identify what documents Plaintiffs requested or include the specific language of the October 29 letter. Without such facts, Plaintiffs' assertion that their attempt to clarify the debt concerns the servicing of the Loan is unsupported and conclusory.

Moreover, RESPA requires a borrower to include in his or her QWR "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). As alleged, the Proposed SAC does not contain any facts suggesting the October 29 letter set forth either the basis of Plaintiffs' belief that the account was in error or provided sufficient detail about other information Plaintiffs sought; as noted, the Proposed SAC

10

does not identify what documents Plaintiffs sought. The Court cannot find a request for unspecified documents is a sufficiently detailed request for information.

Finally, to the extent the October 29 letter also challenged Defendant's "legitimacy" and sought to "verify Shellpoint's ability to collect the debt," it does not constitute a QWR. The *Medrano* Court made clear "that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." 704 F.3d at 667. To the extent the October 29 letter sought to dispute the Loan's validity, RESPA did not require Defendant to respond to such inquiry. *See* Proposed SAC ¶ 54 ("The correspondence specifically requested documentation that would . . . validate the debt owed by Plaintiffs[] and validate Shellpoint's ability to collect the debt. [ ] The information . . . concerned . . . Shellpoint's legitimacy in collecting such payments from Plaintiffs.").

    c. *Summary*

Plaintiffs have not set forth facts showing the October 26 or the October 29 letters were QWRs as defined by RESPA. Accordingly, it would be futile to permit Plaintiffs to amend their REPSA claim as drafted in the proposed SAC.

  3. <u>Summary</u>

Amendment is futile as to Plaintiffs' fraud claim, as the proposed SAC lacks facts to show Defendant engaged in fraud. As alleged, amendment is also futile as to Plaintiffs' RESPA claim.

**B. Undue Delay and Bad Faith**

A moving party's inability to sufficiently explain its delay may indicate that the delay was undue. *Jackson*, 902 F.2d at 1388. Whether the moving party knew or should have known the facts and theories raised in the proposed amendment at the time it filed its original pleadings is a relevant consideration in assessing untimeliness. *Id.* "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). "At some point, . . . a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides a possible [ground] for relief and should be considered." *Ascon Prop., Inc. v. Mobil Oil Co.*, 866

11

F.2d 1149, 1161 (9th Cir. 1989) (quotation marks omitted).

Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early. *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995). "Generally courts require more than unexcused delay: there must be evidence in the record that a party acted with a dilatory motive, intention to cause undue delay, or the goal of otherwise obstructing the litigation process." *Flores v. City of Concord*, 2017 WL 2472977, at *3 (N.D. Cal. June 8, 2017).

Defendant has not made a strong showing of bad faith. Defendant argues "Plaintiffs' proposed amendments are nothing more than a mere attempt to cast aspersions without any substance in order to postpone the foreclosure of the Property." Opp'n at 12. Defendant contends "[s]uch actions are in bad faith, and should not be rewarded." *Id.* But Plaintiffs are acting pro se, and they timely brought their Motion at the Court's direction. *See* Pleadings Order at 15. While Plaintiffs do not explain why there were unable to include their proposed amendments in their FAC, there is nothing in the record suggests they acted in bad faith. As such, the Court cannot find their delay, without more, is grounds for denying amendment. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) ("Undue delay by itself is insufficient to justify denying leave to amend[.]").

## C. Prejudice to the Opposing Party

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "The party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187. As Defendants do not address this factor in their Opposition, the Court cannot find that allowing Plaintiffs to amend their FAC would prejudice Defendant. Moreover, Plaintiffs do not seek to add new legal theories. The Court therefore cannot conclude this factor weighs against amendment.

## D. Previous Amendments

"Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have only once amended their Complaint prior to this Motion. As explained above, that amendment did not substantively address the defects in the Complaint. *See* Pleadings Order at 7, 14 (noting Complaint and FAC were virtually identical); MTD Order at 11-14, 16-19 (explaining basis for dismissal of fraud and RESPA claims and granting leave to amend). Nevertheless, given that the Court permitted Plaintiffs to file the instant Motion to Amend, it cannot conclude this factor weighs against amendment.

**CONCLUSION**

The Court cannot find that Plaintiffs acted in bad faith or unduly delayed amendment or that Defendant would be prejudiced by amendment. Nevertheless, allowing Plaintiffs to file the Proposed SAC would ultimately be futile, as Plaintiffs fail to allege sufficient facts to support their fraud and RESPA claims. The Court therefore **DENIES** the Motion to Amend.

Nevertheless, because it appears Plaintiffs may be able to state a RESPA claim based on the October 29 letter, they may file a motion for leave to file a proposed third amended complaint ("TAC") that alleges facts sufficient to address the deficiencies discussed above. *See Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) ("Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." (edits in original; internal quotation marks omitted)). Any proposed TAC may only assert a RESPA claim based on the October 29 request to clarify the amount of debt owed. Plaintiffs may not reassert their fraud claim and may not reassert their RESPA claim based on the October 26 letter or based on the October 29 letter's request to validate the loan or Defendant's ability to collect the debt.

Plaintiffs shall file a motion for leave to file a proposed TAC by January 11, 2018. The Court will schedule further briefing on the motion if it finds the proposed TAC facially states a RESPA claim.

**IT IS SO ORDERED.**

Dated: December 4, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

13