UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYLLIS SPARKS-MAGDALUYO, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>NEW PENN FINANCIAL, LLC,<br><br>Defendant. | Case No. 16-cv-04223-MEJ<br><br>**ORDER RE: MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 57 |

## INTRODUCTION[1]

When the Court denied Plaintiffs' Motion for Leave to File a Second Amended Complaint, it allowed Plaintiffs Phyllis Sparks-Magdaluyo and Melecio Magdaluyo an opportunity to file a proposed third amended complaint to "assert a RESPA claim based on the October 29 request to clarify the amount of debt owed" on Plaintiffs' home mortgage. Order re: Mot. for Leave to File Second Am. Compl. ("SAC Order") at 13, Dkt. No. 55. Plaintiffs timely filed a Motion for Leave to File a Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 15(a). Dkt. No. 57; *see id.*, Ex. 1 (Proposed TAC). Upon review of the proposed TAC, the Court struck allegations regarding Defendant New Penn Financial, LLC dba Shellpoint Mortgage Servicing's ability or authority to collect the debt and ordered Defendant to otherwise respond to the Motion. Order re: Mot. to File Proposed TAC, Dkt. No. 58; *see* SAC Order at 13 (ordering further briefing only upon finding proposed TAC facially states RESPA claim).

Defendant filed an Opposition (Dkt. No. 59); Plaintiffs did not file a reply. The Court finds this matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b); Civ.

---
[1] The Court's prior orders set forth a detailed factual history of this case. *See* Order re: Mot. for J. on Pleadings at 2-4, Dkt. No. 44; Order re: Mot. to Dismiss at 1-3, Dkt. No. 28.

L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** the Motion for the following reasons.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1). Outside of this timeframe, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under *Rule 15(a)* in favor of granting leave to amend." *Id.* at 1052 (emphasis in original). "Denials of motions for leave to amend have been reversed when lacking a contemporaneous specific finding by the district court of prejudice to the opposing party, bad faith by the moving party, or futility of amendment." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987).

## DISCUSSION

**A. Futility of Amendment**

    1. <u>Applicable Law</u>

"A motion for leave to amend may be denied if it appears to be futile or legally

2

insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). The standard to be applied is identical to that on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.*

To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation and internal quotation marks omitted).

2. <u>Analysis</u>

RESPA allows a borrower or its agent to submit a qualified written request ("QWR") to a servicer of a federally related mortgage loan "for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). To constitute a QWR, the request must "(1) reasonably identif[y] the borrower's name and account, (2) either state[] the borrower's 'reasons for the belief . . . that the account is in error' or 'provide[] sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seek[] 'information relating to the servicing of the loan.'" *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (quoting 12 U.S.C. § 2605(e)(1)(A)-(B)) (ellipses in original; some brackets omitted).

Servicers must respond to a QWR in one of three ways. First, the servicer may make the appropriate corrections to the borrower's account. 12 U.S.C. § 2605(e)(2)(A). Second, it may conduct an investigation and provide the borrower with a written explanation or clarification that includes the reasons the servicer believes the borrower's account is correct as determined by the servicer. *Id.* § 2605(e)(2)(B). Third, it may conduct an investigation and provide the borrower with a written explanation of why the information is unavailable or cannot be obtained by the servicer. *Id.* § 2605(e)(2)(C). "RESPA does not require any magic language before a servicer

3

must construe a written communication from a borrower as a qualified written request and respond accordingly." *Medrano*, 704 F.3d at 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)).

Plaintiffs previously alleged that their October 29 letter "requested documentation that would clarify the debt amounts owed, validate the debt owed by Plaintiffs, and validate Shellpoint's ability to collect the debt." Proposed SAC ¶ 54, Dkt. No. 45. The Court found that

> [w]hile it is unclear what Plaintiffs intended to accomplish by "clarify[ing] the debt," this suggests Plaintiffs may have sought information about "any scheduled periodic payments . . . pursuant to the terms of any loan . . . and making the payments of principal and interest." 12 U.S.C. § 2605(i)(3); *see* Proposed SAC ¶ 54 ("The information sought concerned the amount of payments on the Loan[.]"). If this is the case, this portion of the October 29 letter may form the basis for a QWR. *See Roussel v. Wells Fargo Bank*, 2013 WL 146370, at *3 (N.D. Cal. Jan. 14, 2013) (finding letter qualified as a QWR where, "although the letter did make a number of inquiries that seem to go to the validity of the loan, it also made a number of inquiries about payments, and specifically referenced servicing at least twice.").

SAC Order at 10. However, the Court ultimately found these allegations were conclusory:

> The proposed SAC does not contain details explaining how a request to "clarify the debt amounts owed" relate to the Loan's servicing; for instance, it does not identify what documents Plaintiffs requested or include the specific language of the October 29 letter. Without such facts, Plaintiffs' assertion that their attempt to clarify the debt concerns the servicing of the Loan is unsupported and conclusory.
>
> Moreover, RESPA requires a borrower to include in his or her QWR "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). As alleged, the Proposed SAC does not contain any facts suggesting the October 29 letter set forth either the basis of Plaintiffs" belief that the account was in error or provided sufficient detail about other information Plaintiffs sought; as noted, the Proposed SAC does not identify what documents Plaintiffs sought. The Court cannot find a request for unspecified documents is a sufficiently detailed request for information.

SAC Order at 10-11.

Plaintiffs now allege their "request to 'clarify the debt amounts owed' relates to the Loan's servicing documentation relating to an account history of all scheduled periodic payments made

4

by Plaintiffs pursuant to the terms of the Loan. Such request includes a summary of all principal and interest payments made by the Plaintiffs towards the Loan as was required pursuant to the terms of the Loan." Proposed TAC ¶ 11. In other words, "Plaintiffs' October 29, 2015 QWR essentially sought a payment history of the Loan, a servicing request. . . ." *Id.*; *id.* ¶ 6 ("The information sought related to the servicing because it concerned the amount of the payments on the Loan. . . ."); *id.* ¶ 12 ("Plaintiffs' October 29, 2015 QWR expressed Plaintiffs' concern that the account was in error and Plaintiffs[] sought a payment history. . . .").

Plaintiffs also allege their "written communication included Plaintiffs' name, accounts number, and [] provided sufficient detail to the servicer regarding information sought by the Plaintiffs." *Id.* ¶ 6; *see id.* ("[T]he information sought . . . was clearly enumerated in detail so there was no confusion as to what Plaintiffs sought."). As such, "Plaintiffs' written request[] for information about Plaintiffs' account . . . were 'qualified written requests' within the meaning of RESPA." *Id.* ¶ 13. "To date, Shellpoint has neglected its servicing duties and failed to provide documentation that would clarify the debt amounts owed . . . ." *Id.* ¶ 10.

Although Defendant argues "Plaintiffs fail to allege how the account is in error or allege their reasons for their belief that the account was in error" (Opp'n at 6), the Court finds this omission, in and of itself, is not fatal to Plaintiffs' claim. The *Medrano* court held a QWR must "*either* state[] the borrowers reasons for the belief that the account is in error *or* provide[] sufficient detail to the servicer regarding other information sought by the borrower." 704 F.3d at 666 (internal quotation marks and edits omitted; emphasis added); *see* 12 U.S.C. § 2605(e)(1)(B) (A QWR must "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower." (emphasis added)). Indeed, "[s]everal courts have rejected [the] contention that a QWR must state a plaintiff's reasons for believing the account was in error." *Ng v. US Bank, NA*, 2016 WL 5390296, at *5 (N.D. Cal. Sept. 26, 2016), *aff'd sub nom. Ng v. U.S. Bank, NA*, 712 F. App'x 665 (9th Cir. 2018). "'Section 2605(e)(1)(B) is written in the disjunctive and therefore does not require that a QWR necessarily contain 'a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error.' A

5

QWR is still valid if it instead 'provides sufficient detail to the servicer regarding other information sought by the borrower.'" *Id.* (quoting *Lawther v. OneWest Bank, FSB*, 2012 WL 298110, at *15 (N.D. Cal. Feb. 1, 2012)). Thus, so long as Plaintiffs adequately allege the October 29 letter provided sufficient detail regarding the information they sought, their claim may proceed.[2]

Plaintiffs allege they requested "a summary of all principle and interest payments made by the Plaintiffs towards the Loan as was required pursuant to the terms of the Loan." Proposed TAC ¶ 11. Plaintiffs further allege they sought a payment history. *Id.* ¶ 12. The Court finds these facts sufficiently describe what Plaintiffs sought from Defendant.

Nor can the Court find Plaintiffs' failure to attach the October 29 letter to their Proposed TAC is grounds for dismissal. Opp'n at 6; *see Kennedy v. Bank of Am., N.A.*, 2012 WL 1458196, at *6 (N.D. Cal. Apr. 26, 2012) (finding failure to attach QWR to complaint did not require dismissal, where "[p]laintiff . . . adequately alleged that he sent a letter seeking the kind of information covered by the statute").

"[T]o state a claim for relief pursuant to § 2605(e)(2), a plaintiff must at the very least allege basic facts plausibly showing that the written correspondence was a qualified written request, and further showing how the defendant failed to comply with the statute." *Tapang v. Wells Fargo Bank, N.A.*, 2012 WL 3778965, at *4 (N.D. Cal. Aug. 30, 2012). The Court finds Plaintiffs have done so in the Proposed TAC: they allege the October 29 letter included their names and account number (Proposed TAC ¶ 6); identified the information sought, i.e., an account history of all scheduled periodic payments or a payment history (*id.* ¶¶ 11-12); and sought information relating to servicing of the Loan, i.e., "scheduled periodic payments from a borrower pursuant to the terms of [the] loan, 12 U.S.C. § 2605(i)(3). Accordingly, the Court finds the Proposed TAC adequately alleges a RESPA claim.

## CONCLUSION

Defendant does not challenge amendment on grounds of undue delay, bad faith, prejudice,

---

[2] Defendant does not challenge the futility of amending Plaintiffs' RESPA claim on any other grounds. *See* Opp'n.

6

or previous amendments. *See* Opp'n. Based on the foregoing, the Court **GRANTS** the Motion for Leave to File the Proposed TAC.

The Court shall hold a case management conference on June 28, 2018 at 10:00 a.m. in Courtroom B, 450 Golden Gate Avenue, San Francisco, California. This conference shall be attended by <u>lead</u> trial counsel for parties who are represented; parties who are proceeding without counsel must appear personally. No later than June 21, 2018, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/mejorders. The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms. If the statement is e-filed, no chambers copy is required.

Finally, the Court **ORDERS** the parties to contact Judge Westmore to schedule a settlement conference.

**IT IS SO ORDERED.**

Dated: May 25, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge

7