UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYLLIS SPARKS-MAGDALUYO, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> NEW PENN FINANCIAL, LLC, <br><br> Defendant. | Case No. 16-cv-04223-MEJ <br><br> **ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br><br> Re: Dkt. No. 68 |

## INTRODUCTION

Plaintiffs Phyllis and Melecio Magdaluyo (together, "Plaintiffs") assert one claim for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, against Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Defendant") arising out of foreclosure-related activities on Plaintiffs' real property. *See* Third Am. Compl ("TAC"), Dkt. No. 67. Before the Court is Plaintiffs' "Ex Parte Application for an Order to Show Cause re Preliminary Injunction and Temporary Restraining Order Enjoining Defendant and Its Agents from the Sale of Subject Property." Dkt. No. 68. Having considered Plaintiff's application, the relevant legal authority, and the record in this case, the Court **DENIES** Plaintiffs' application for the following reasons.

## BACKGROUND

On or about March 22, 2005, Plaintiffs obtained a $377,000 loan (the "Loan") from Quick Loan Funding, Inc. TAC ¶ 5. The Loan was secured by a deed of trust encumbering real property located at 216 Bridgeview Drive, San Francisco, California 94590 (the "Property"). *Id.* ¶¶ 3, 5.

On or about October 26, 2015, Plaintiffs sent Defendant a "'qualified written request' in an attempt to request validation of the debt associated with the Property. *Id.* ¶ 6. In so doing,

Plaintiffs requested "documentation that would clarify the debt amounts owed, validate the debt owed by Plaintiffs, and validate [Defendant's] ability to collect the debt." *Id.* To date, Defendant "has neglected its servicing duties" and failed to provide the requested documentation.

In their Application, Plaintiffs state Defendant plans to conduct a trustee's sale of the Property on August 1, 2018. App. at 2. They seek to prevent "any further eviction process in connection with the [Property]." *Id.* They maintain they would be irreparably prejudiced if the Application is heard on a regular noticed basis given the impending trustee's sale. *Id.* at 5.

## LEGAL STANDARD

The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). The issuance of a preliminary injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## DISCUSSION

The Court recognizes that loss of a home can constitute irreparable harm. *See, e.g., Tapang v. Wells Fargo Bank, N.A.*, 2012 WL 1894273, at *3 (N.D. Cal. May 23, 2012); *Perry v. Nat'l Default Servicing Corp.*, 2010 WL 3325623, at *6 (N.D. Cal. Aug.20, 2010). However, the Court must still consider whether Plaintiffs have established they are likely to succeed on the merits of their claim.

RESPA allows a borrower or its agent to submit a qualified written request ("QWR") to a servicer of a federally related mortgage loan "for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). To constitute a QWR, the request must "(1) reasonably identif[y] the borrower's name and account, (2) either state[] the borrower's 'reasons for the belief

. . . that the account is in error' or 'provide[] sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seek[] 'information relating to the servicing of the loan.'" *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (quoting 12 U.S.C. § 2605(e)(1)(A)-(B)) (ellipses in original; some brackets omitted).

Servicers must respond to a QWR in one of three ways. First, the servicer may make the appropriate corrections to the borrower's account. 12 U.S.C. § 2605(e)(2)(A). Second, it may conduct an investigation and provide the borrower with a written explanation or clarification that includes the reasons the servicer believes the borrower's account is correct as determined by the servicer. *Id.* § 2605(e)(2)(B). Third, it may conduct an investigation and provide the borrower with a written explanation of why the information is unavailable or cannot be obtained by the servicer. *Id.* § 2605(e)(2)(C). "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Medrano*, 704 F.3d at 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)).

Plaintiffs allege their "request to 'clarify the debt amounts owed' relates to the Loan's servicing documentation relating to an account history of all scheduled periodic payments made by Plaintiffs pursuant to the terms of the Loan. Such request includes a summary of all principal and interest payments made by the Plaintiffs towards the Loan as was required pursuant to the terms of the Loan." TAC ¶ 11. In other words, "Plaintiffs' October 29, 2015 QWR essentially sought a payment history of the Loan, a servicing request. . . ." *Id.*; *id.* ¶ 6 ("The information sought related to the servicing because it concerned the amount of the payments on the Loan. . . ."); *id.* ¶ 12 ("Plaintiffs' October 29, 2015 QWR expressed Plaintiffs' concern that the account was in error and Plaintiffs[] sought a payment history. . . .").

Plaintiffs also allege their "written communication included Plaintiffs' name, accounts number, and [] provided sufficient detail to the servicer regarding information sought by the Plaintiffs." *Id.* ¶ 6; *see id.* ("[T]he information sought . . . was clearly enumerated in detail so there was no confusion as to what Plaintiffs sought."). As such, "Plaintiffs' written request[] for information about Plaintiffs' account . . . were 'qualified written requests' within the meaning of

3

RESPA." *Id.* ¶ 13. "To date, Shellpoint has neglected its servicing duties and failed to provide documentation that would clarify the debt amounts owed . . . ." *Id.* ¶ 10.

Plaintiffs further allege they requested "a summary of all principle and interest payments made by the Plaintiffs towards the Loan as was required pursuant to the terms of the Loan." *Id.* ¶ 11. Plaintiffs further allege they sought a payment history. *Id.* ¶ 12. The Court finds these facts sufficiently describe what Plaintiffs sought from Defendant.

"[T]o state a claim for relief pursuant to § 2605(e)(2), a plaintiff must at the very least allege basic facts plausibly showing that the written correspondence was a qualified written request, and further showing how the defendant failed to comply with the statute." *Tapang*, 2012 WL 3778965, at *4. The Court finds Plaintiffs have done so in the TAC: they allege the October 29 letter included their names and account number (TAC ¶ 6); identified the information sought, i.e., an account history of all scheduled periodic payments or a payment history (*id.* ¶¶ 11-12); and sought information relating to servicing of the Loan, i.e., "scheduled periodic payments from a borrower pursuant to the terms of [the] loan, 12 U.S.C. § 2605(i)(3). Accordingly, the Court finds the Proposed TAC adequately alleges a RESPA claim.

However, Plaintiffs are not entitled to a TRO preventing a foreclosure sale merely by alleging they sent a QWR to Defendant. *Gandrup v. GMAC Mortg.*, 2011 WL 703753, at *2 (N.D. Cal. Feb. 18, 2011) (citing *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 U.S. Dist. LEXIS 80294 (N.D. Cal. July 9, 2010) (the damages remedies available under RESPA do not permit injunctive relief against foreclosure). Plaintiffs must also allege facts showing they were damaged by the alleged violations. *Garcia v. PNC Mortg.*, 2015 WL 534395, at *7 (N.D. Cal. Feb. 9, 2015). RESPA authorizes "actual damages to the borrower" as a result of a failure to comply with RESPA requirements." 12 U.S.C. § 2605(f)(1)(A). However, alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual, pecuniary damages. *Garcia*, 2015 WL 534395, at *7 (citing *Smiley v. JP Morgan Chase*, 2015 WL 217258 at *3 (N.D. Cal. Jan. 15, 2015); *Swanson v. EMC Mortg. Corp.*, 2009 WL 3627925 at *7 (E.D. Cal. Oct. 29, 2009); *Velasco v. Homewide Lending Corp.*, 2013 WL 3188854 at *2 (C.D. Cal. June 21, 2013); *Ramanujam v. Reunion*

4

*Mortg., Inc.*, 2011 WL 446047 at *5 (N.D. Cal. Feb. 3, 2011). To the extent Plaintiffs claim damages based on the foreclosure proceedings, under California law, a borrower may not seek to quiet title without first paying the outstanding debt on the property. See *Id.* (citing *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted)). Finally, under California law, there is no requirement that the trustee have possession of the physical note before initiating foreclosure proceedings. See *Id.* (citing *Yazdanpanah v. Sacramento Valley Mortg. Group*, 2009 U.S. Dist. LEXIS 111557, at * 23–25 (N.D. Cal. Nov. 30, 2009); *Wurtzberger v. Resmae Mortg. Corp.*, 2010 U.S. Dist. LEXIS 51751, at *9–11 (E.D. Cal. Apr. 29, 2010); *Benham v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 11189, 2010 WL 532685 at *2-3 (N.D. Cal., Feb.9, 2010)).

Thus, as Plaintiffs have not alleged they have paid the outstanding debt on the Property, or alleged they can do so, they have failed to establish they are likely to succeed on the merits.

## CONCLUSION

For the reasons specified above, Plaintiffs' TRO application is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 23, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge